ALARCON, Circuit Judge:
 

 White appeals from a district court order disallowing his claimed homestead exemption in federal bankruptcy proceedings.
 

 In a divorce decree, an Oregon court awarded White’s wife ownership of the family residence and, in return, awarded White a judgment lien against the property in the amount of $13,000. White later filed bankruptcy and claimed a homestead exemption in the value of that lien. The district court held that the lien was not a sufficient ownership interest to constitute a homestead under Or.Rev.Stat. § 23.240.
 

 We conclude that the order disallowing the exemption is appealable as a final judgment, and affirm the holding that the lien was not a sufficient ownership to constitute a homestead. We remand, however, for further consideration whether the lien was entitled to protection as the proceeds of the sale of a homestead.
 

 FACTS
 

 Cheryl and Robert White were divorced by an Oregon court in December 1981. The court’s decree provided that Cheryl be given ownership of the family residence. In payment for his interest in the residence, Robert was to be paid $13,000, secured by a judgment lien on the residence. The purchase price was to be paid within five years or upon sale of the residence, whichever happened first.
 

 In mid-1982, Robert filed for bankruptcy. He submitted a chapter 13 plan that provided for less than full payment of his obligations to Cheryl under the property division order, and claimed a homestead exemption in the value of the lien on the residence. Cheryl objected to the homestead exemption.
 

 The bankruptcy court allowed the homestead exemption and confirmed the plan. On appeal, the district court reversed, holding that the judgment lien was not a sufficient ownership interest in the residence to qualify for a homestead exemption under Or.Rev.Stat. § 23.240.
 

 ANALYSIS
 

 I.
 

 Appealability
 

 Before reaching the merits, we must first determine whether the district court order denying the exemption is appealable. Under the Bankruptcy Act of 1978, we have no jurisdiction to hear interlocutory appeals in bankruptcy proceedings.
 
 In re Rubin,
 
 693 F.2d 73, 76-77 (9th Cir.1982). An order denying an exemption does not meet the conventional test for a final judgment because it does not terminate the entire bankruptcy case.
 
 See In re Brissette,
 
 561 F.2d 779 (9th Cir.1977). Recently, however, we adopted a test that emphasizes the need for immediate review, rather than whether the order is technically interlocutory, in determining what is appealable as a final judgment in bankruptcy proceedings.
 
 In re Mason,
 
 709 F.2d 1313 (9th Cir.1983). Under
 
 Mason
 
 the order in the present case is ap-pealable.
 

 In
 
 Mason
 
 the debtor appealed the district court’s refusal to set aside the order for relief on an involuntary petition for bankruptcy. The order for relief was technically interlocutory because it did not conclude the bankruptcy case.
 
 Id.
 
 at 1316. The court noted, however, that bankruptcy proceedings are unique and that the rules of finality developed for conventional litigation should not be applied mechanically. Those orders that “ ‘may determine and seriously affect substantive rights’ and ‘cause irreparable harm to the losing party if he had to wait to the end of the bankruptcy case’ ” are immediately appealable.
 
 Id.
 
 at 1316-17. The court concluded that an order for relief in an involuntary bankruptcy case is appealable under this test.
 

 An order for relief effectively divests the debtor of his assets, creating an estate
 
 *886
 
 controlled by the bankruptcy court. In a Chapter 7 case the trustee is obligated to gather the assets of the estate, liquidate them, and to the extent possible satisfy creditors’ claims.... During the administration of the estate the debtor’s rights are limited. On entry of the order for relief he loses control of his assets, which may include a business.
 
 See
 
 11 U.S.C. § 303(f). Once property of the estate is liquidated there appears to be no way the debtor can force bona fide purchasers to return the assets. [Citations omitted.] A debtor may possibly attack the propriety of every sale by appeal, but to effectively do so he must seek to stay the sale.
 

 Id.
 
 at 1317.
 

 We previously held that a similar need exists for immediate review of orders granting or denying exemptions.
 
 In re Brissette,
 
 561 F.2d 779 (9th Cir.1977).
 
 Brissette
 
 did not determine that such orders were final. Under the law in effect at that time, this court could hear interlocutory appeals in certain bankruptcy matters. In concluding that the order was appealable, however,
 
 Brissette
 
 employed a need-for-immediate-review test almost identical to that adopted in
 
 Mason.
 

 A decision that property is exempt may so deplete the potential estate that creditors will decline to participate further in the proceeding; a decision that it is not exempt will cause title to it to vest in the trustee during the pendency of the action, with all the attendant consequences of vesting. Although the exemption decision is technically interlocutory, it is frequently the final resolution of the rights of the parties for practical purposes. Erroneous determinations that property is nonexempt encourage creditors to press claims and to divide assets only to be told on appeal that there is nothing to divide. Of greater moment, however, the bankrupt may be thereby deprived of the necessities of life which Section 6 was designed to preserve to him during the pendency of the action. On the other hand, an erroneous decision of exemption will leave property in the hands of the bankrupt and subject to dissipation without the appropriate satisfaction of any creditor.
 

 Id.
 
 at 782-83.
 

 The present case is distinguishable from this court’s recent decision in
 
 In re Martinez, 721
 
 F.2d 262 (9th Cir.1983), in which we held that a bankruptcy appellate panel (BAP) decision regarding the allowance of an exemption was not a final judgment. In
 
 Martinez,
 
 the BAP did not allow or deny the exemption; it remanded for further findings on that issue. We explicitly relied upon the fact that the BAP remanded in concluding that the order was not final.
 
 Id.
 
 at 265. The district court order in the present case finally determined all issues regarding the claimed exemption.
 

 We conclude that the order appealed from in the present case is a final judgment, affording this court jurisdiction.
 

 II.
 

 Insufficient Ownership Interest
 

 White contends that the district court erred in holding that the lien was not a sufficient ownership interest to be the basis of a homestead exemption under Or. Rev.Stat. § 23.240.
 
 [1]
 
 We do not agree.
 

 No Oregon case has held that a non-pos-sessory interest may be the basis of a homestead exemption. Moreover, sound policy suggests that the statute not be construed to allow a homestead exemption for such a
 
 *887
 
 lien. The purpose of the act is to allow an owner to keep his home. The lien does not preserve a roof over White’s head; it gives him no right to live on the premises. To the contrary, the property division order gives sole possession to White’s wife. Nor does White’s lien preserve a home for his children. The children may continue to live in the home because White’s wife now owns it and can claim a homestead exemption herself, not because of White’s lien. There is no need to allow the exemption to prevent White’s creditors from ejecting his children from the home. Because the lien gives White no right to possession, a creditor who obtains the lien cannot force out White’s children.
 

 III.
 

 Proceeds
 

 White next argues that the lien represents the proceeds from the sale of his home, which are protected under Or.Rev. Stat. § 23.240 to permit him to reinvest in another homestead. Although White argued this “proceeds” theory below, the district court did not address it.
 

 White’s argument is based on the following language of Or.Rev.Stat. § 23.240:
 

 (1) ... [T]he exemption shall not be impaired by:
 

 (b) Removal or absence from the property; or
 

 (c) The sale of the property.
 

 (2) The exemption shall extend to the proceeds derived from such sale ..., if the proceeds are held for a period not exceeding one year and held with the intention to procure another homestead therewith.
 

 (3) The exemption period under paragraphs (b) and (c) of subsection (1) of this section shall be for one year from the removal, absence or sale, whichever occurs first.
 

 The statutory language quoted above imposes three requirements for protecting the proceeds of the transfer of a homestead: (1) there must be a sale or removal; (2) the proceeds may not be held for more than one year; and (3) the proceeds must be held with the intent to reinvest in another homestead. No Oregon cases add to or clarify the requirements set forth in the language of the statute.
 

 White satisfies the first requirement. The court order granting his wife ownership of the house is either a “sale” of the property or the “removal” of White from the property.
 

 White also satisfies the second requirement. He has not held the proceeds for more than one year. White filed the bankruptcy petition within one year of the order transfering ownership of the residence.
 
 [2]
 
 The filing of the bankruptcy petition tolled the period for reinvesting the proceeds, because the proceeds became property of the bankruptcy estate, subject to the control of the bankruptcy court.
 
 See In re Widdershoven,
 
 452 F.Supp. 503, 504-05 (N.D.Cal.1978).
 

 One might argue that it would be an idle act to protect White’s interest in the proceeds ¡because the reinvestment period would expire before he could actually reinvest. The reinvestment period would begin to run again as soon as the exemption was allowed.
 
 Id.
 
 at 505. White has no right under the lien to receive payment for five years, unless his wife sells the residence. Thus, it is very unlikely that White would actually be able to reinvest before the remainder of the one-year reinvestment period runs.
 

 We note in this regard that the California Supreme Court has held that the reinvestment period in the California homestead statute is tolled where payment of the pro
 
 *888
 
 ceeds is delayed through no fault of the debtor.
 
 See Thorsby v. Babcock,
 
 36 Cal.2d 202, 222 P.2d 863 (1950). The California and Oregon statutes are similar in relevant respects. Both require reinvestment within a fixed period of time; neither explicitly provides for tolling of that period pending receipt of the proceeds. Both the Oregon and the California Supreme Courts have held that the homestead exemption is to be construed liberally and against forfeiture.
 
 See id.; DeHaven & Son Hardware v. Schultz,
 
 122 Or. 493, 496, 259 P. 778 (1927). We decline to hold at this time, however, that Oregon courts must follow
 
 Thorsby.
 
 That issue should be considered in the first instance by the district court.
 

 We cannot determine whether White satisfies the third requirement. Neither the bankruptcy court nor the district court determined whether he held the proceeds with the intent to reinvest them in another homestead. The district court shall also address this issue upon remand.
 

 REVERSED and REMANDED for further proceedings.
 

 [1]
 

 . Or.Rev.Stat. § 23.240 provides in relevant part:
 

 A homestead shall be exempt from sale on execution, from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of $15,000, except as otherwise provided by law. The exemption shall be effective without the necessity of a claim thereof by the judgment debtor. When two or more members of a household are debtors whose interests in the homestead are subject to sale on execution, the lien of a judgment or liability in any form, their combined exemptions under this section shall not exceed $20,000. The homestead must be the actual abode of and occupied by the owner, or the owner’s spouse, parent or child ....
 

 [2]
 

 . The running of the reinvestment period did not begin with any departure from the residence by White before the property division decree. Up to the time of the decree, White had an ownership interest in the residence. Thus, before the entry of the decree he could still claim a homestead exemption on the basis of his ownership and the fact that his children resided there.