In re REGA PROPERTIES, LTD., Debtor.

J. Reed DUNKLEY, Plaintiff–Appellant,

v.

REGA PROPERTIES, LTD., Defendant–Appellee.

No. 88–4217.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Decided Feb. 1, 1990.

Joseph A. Esposito, Esposito, Tombari and George, Spokane, Wash., for plaintiff-appellant.

Robert J. McKanna, Spokane, Wash., for defendant-appellee.

Before NORRIS, THOMPSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We consider the questions of whether a bankruptcy court order denying a motion to dismiss a petition in bankruptcy is an appealable "final order" and what is the appropriate measure of damages resulting from a rejected executory contract.

## I

In February 1981, Rega Properties, Ltd. ("Rega") contracted to purchase land in the Spokane Valley from Tanglewood Enterprises, Inc., a Canadian corporation owned solely by Dunkley and his wife. Dunkley dissolved Tanglewood in 1984 and succeeded to all its rights, claims, and liabilities.

The contract required Rega to make annual payments to Dunkley. As the payments were made, certain selected properties were severed and deeded to Rega. Rega's payments entitled it to receive free and clear, eleven, ten-acre parcels of land; 340 acres remained untransferred under the contract.

In November 1982, Dunkley borrowed $157,000 from Pacific Securities Company ("Pacific"). The loan was secured by a deed of trust which Dunkley executed in favor of Pacific on the properties still covered by Dunkley's contract of sale to Rega. Dunkley used the loan proceeds for purposes unrelated to this appeal. Subsequently, Dunkley defaulted on his obligation to Pacific and thereafter Pacific obtained a judgment foreclosing its deed of trust on the 340 acres.

When Rega filed for protection under Chapter 11 in June 1985, the bankruptcy court authorized Rega to reject its real estate contract with Dunkley in accordance with 11 U.S.C. § 365. Dunkley subsequently moved to dismiss Rega's bankruptcy petition for cause under 11 U.S.C. § 1112(b), alleging that Rega had filed in bad faith. The bankruptcy court denied Dunkley's motion to dismiss and resolved his claim by authorizing the return of the remaining land to Dunkley with damages representing the difference between Dunkley's claim and the value of the property.

The district court affirmed the bankruptcy court's order denying Dunkley's motion to dismiss and determining the measure of damages. Dunkley now appeals from the district court's judgment.

## II

Under 28 U.S.C. § 158(d),[1] the courts of appeals have jurisdiction over appeals only from final decisions, judgments, orders, and decrees entered by a district court from a bankruptcy appeal. *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 911 (9th Cir.1988); *King v. Stanton (In re Stanton)*, 766 F.2d 1283, 1285 (9th Cir.1985).[2] Unlike the district courts, the courts of appeals may not grant leave to hear interlocutory bankruptcy appeals. "Interlocutory orders are not appealable as of right. They may be reviewed at the discretion of the district courts ... but they are not appealable to the court of appeals under 28 U.S.C. § 158(d)." *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1378 (9th Cir.1985) (citations omitted).

In this case, the bankruptcy court denied Dunkley's motion to dismiss Rega's bankruptcy action for bad faith under section 1112(b),[3] and the district court affirmed. Therefore, the jurisdictional question before us is whether the district court's order affirming the bankruptcy court's decision

1. This section provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." 28 U.S.C. § 158(d).

2. Rega contends the district court did not have jurisdiction under 28 U.S.C. § 158(a) over Dunkley's appeal from the bankruptcy court's order denying his motion to dismiss. Section 158(a) authorizes district courts to hear appeals from final bankruptcy orders or from interlocutory bankruptcy orders if the district court grants leave to appeal. Rega argues that the bankruptcy court's order did not explicitly deny Dunkley's motion to dismiss. However, since the bankruptcy action is still proceeding, we believe it is reasonable to conclude that the bankruptcy court, in effect, denied Dunkley's motion to dismiss. Second, Rega contends that since a denial of a motion to dismiss is generally considered interlocutory, the district court would have jurisdiction only if it granted leave to appeal. We believe, however, that the district court implicitly granted leave to appeal because it actually ruled on the appeal. *See Committee of Unsecured Creditors v. Interfirst Bank Dallas (In re Wood and Locker, Inc.)*, 868 F.2d 139, 141–42 (5th Cir.1989).

3. 11 U.S.C. § 1112(b) provides that the bankruptcy court "may dismiss a case under this chapter ... for cause." 11 U.S.C. § 1112(b).

denying Dunkley's motion to dismiss is a final, appealable order under section 158(d).

This court has adopted a pragmatic approach to deciding whether a bankruptcy court's order is final, "recognizing that 'certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.'" *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.)*, 833 F.2d 797, 800 (9th Cir. 1987) (quoting *Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1317 (9th Cir.1983)).

■ This court uses a test that "'emphasizes the need for immediate review, rather than whether the order is technically interlocutory, in determining what is appealable as a final judgment in bankruptcy proceedings.'" *Farber v. 405 N. Bedford Dr. Corp. (In re 405 N. Bedford Dr. Corp.)*, 778 F.2d 1374, 1377 (9th Cir.1985) (quoting *White v. White (In re White)*, 727 F.2d 884, 885 (9th Cir.1984)). Orders that cause irreparable harm to the losing party are immediately appealable, *In re Mason*, 709 F.2d at 1316, so long as the orders finally determine the discrete issues to which they are addressed. *Four Seas Center Ltd. v. Davres, Inc. (In re Four Seas Center, Ltd.)*, 754 F.2d 1416, 1418 (9th Cir.1985). But when "'further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review in this court under [section 158].'" *In re 405 N. Bedford Dr. Corp.*, 778 F.2d at 1377 (quoting *Four Seas*, 754 F.2d at 1418).

In a recent bankruptcy case, the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit determined that the bankruptcy court's order denying a motion to dismiss for bad faith, in that particular case, was a final, appealable order. *Canadian Commercial Bank v. Hotel Hollywood (In re Hotel Hollywood)*, 95 B.R. 130,

132 (Bankr. 9th Cir.1988) ("We are of the view that the orders appealed from, given the circumstances of this case, affect the rights of the parties with a degree of finality sufficient to warrant appellate review."). While the BAP considered the bankruptcy court's orders in *In re Hotel Hollywood* to be final and thus appealable, we nonetheless determine that in this case the bankruptcy court's order denying Dunkley's motion to dismiss for bad faith is not a final, appealable order.

We believe that this case is controlled by our decision in *In re 405 N. Bedford Dr. Corp.*, which held that a denial of a motion to dismiss under section 1112(b) for cause was not final under this circuit's finality test and therefore this court did not have jurisdiction.[4] In *In re 405 N. Bedford Dr. Corp.*, as in this case, creditors brought a motion in bankruptcy court to dismiss the debtor's petition under section 1112(b) for bad faith. The bankruptcy court had denied the creditor's motion to dismiss and the district court affirmed.

Dunkley argues that he will suffer irreparable harm if he cannot immediately appeal and that he has no other avenues available to protect his interest. But, as this court noted in *In re 405 N. Bedford Dr. Corp.*, there are adequate protections provided under the Bankruptcy Code. "Although the beneficiaries will have to continue their participation in the reorganization process, their interests will be protected while they participate." 778 F.2d at 1377; *see, e.g.*, 11 U.S.C. §§ 361, 363(e) (creditor's right to adequate protection).

Furthermore, in *In re 405 N. Bedford Dr. Corp.*, this court noted strong policy reasons for not considering the denial of a motion to dismiss a final order:

[C]lassifying the denial of a motion to dismiss for bad faith filing as a final order would have an undesirable impact on the reorganization process. Creditors would be forced to appeal the bad faith filing issue to this court immediately or

4. Generally, the denial of a motion to dismiss is considered nonfinal. *See* 1 Collier on Bankruptcy ¶ 3.03[6][b] at 3–172 (1989) ("[D]enial of a motion to dismiss ... is interlocutory"); *John E. Burns Drilling Co. v. Central Bank*, 739 F.2d 1489, 1491 (10th Cir.1984) (court of appeals lacks jurisdiction to review bankruptcy court's denial of motion to dismiss because it is not a final decision).

forego appealing the issue to this court entirely.... If an immediate appeal to this court is permitted, the bankruptcy court is then faced with the difficult choice of whether to proceed with the reorganization process knowing that the appeal of bad faith filing issue may render further reorganization proceedings unnecessary, or stay the reorganization pending our decision. If the reorganization process is stayed and we affirm the denial of the motion to dismiss, then the reorganization process is unnecessarily delayed.

778 F.2d at 1379.

We conclude that Dunkley's situation does not present irreparable harm or special hardship. Accordingly, under this court's finality analysis, the bankruptcy court's order denying Dunkley's motion to dismiss for bad faith filing is not a final order, and thus this court does not have jurisdiction over Dunkley's appeal of that portion of the district court's order which affirmed such denial.

### III

Dunkley argues that the district court erred in affirming the bankruptcy court's determination of the measure of damages. The bankruptcy court deducted the value of the property from the contract price. We have jurisdiction under section 158(d) to review the bankruptcy court's determination of measure of damages because it is a final decision disposing of Dunkley's claim.

Both Dunkley and Rega argue that Washington law should determine the measurement of damages resulting from the rejected executory contract. The bankruptcy court apparently used a federal measure of damages. Although the district court affirmed the bankruptcy court's use of the federal measure of damages, it noted that the application of either the federal or state law would lead to the same result. We now consider whether state or federal law applies.

### A.

■ The rejection of a contract under bankruptcy law "constitutes a breach of such a contract." 11 U.S.C. § 365. Although the rejection of the real estate contract between Rega and Dunkley results from the application of the Bankruptcy Code—specifically section 365—the measurement of damages appears to be determined by applying state law as long as it is not inconsistent with federal bankruptcy policy.

The Supreme Court in *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), stated that "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." The Sixth Circuit has extended this reasoning to contract law. The principle that "state law should generally be used to decide issues regarding property interests—applies equally to contract cases, which would be governed by state law absent the bankruptcy." *Ohio v. Collins (In re Madeline Marie Nursing Homes),* 694 F.2d 433, 439 (6th Cir.1982) (finding that the bankruptcy court failed to examine state law and to accord due respect to Medicaid scheme in determining Ohio's claim against debtor for reimbursements under Medicaid program).

This court has also applied state contract law to issues arising under bankruptcy law. "Although whether a given contract is 'executory' under the Bankruptcy Act is an issue of federal law ... the question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law." *Hall v. Perry (In re Cochise College Park, Inc.),* 703 F.2d 1339, 1348 n. 4 (9th Cir. 1983).

Although state law is the starting point, "[c]ase law has further established that the bankruptcy courts, as courts of the United States, have power to supersede state law where it conflicts with the federal bankruptcy law which the court is primarily bound to enforce." *In re Madeline Marie,* 694 F.2d at 436–37. Therefore, we must next examine relevant Washington law and

consider whether the applicable state law is consistent with federal bankruptcy policy.

## B.

■ Dunkley and Rega disagree on the appropriate measurement of damages under Washington law. Dunkley argues that he should receive "actual damages" under his contract with Rega. He contends that the appropriate measure of damages for the rejected contract is controlled by *Smith v. King*, 106 Wash.2d 443, 722 P.2d 796 (1986), in which the Washington State Supreme Court held that the measure of damages was equal to the unpaid portion of the purchase price. In *Smith*, the owners of an apartment building sold the building to purchasers under a real estate contract. The first purchasers then resold the property to second purchasers under a separate real estate contract, in which the second purchasers expressly assumed and agreed to pay all amounts due to the owners on the first contract. The second purchasers subsequently abandoned the property and made no payments either to the owners or to the first purchasers. The owners then brought an action to forfeit out the interest of both the first and second purchasers in the property. The Washington Supreme Court held that the first purchaser could recover damages from the second purchaser in an amount equal to the unpaid portion of the purchase price.

Rega, however, contends that the "traditional" measurement of damages, as illustrated by *Reiter v. Bailey*, 180 Wash. 230, 39 P.2d 370 (1934), is the appropriate law to apply for the measurement of damages in this case. In *Reiter*, the plaintiffs contracted with the defendants to sell a piece of property. After making several payments under the contract, the defendants failed to make any more payments. The Washington Supreme Court held that "[t]he rule for the measure of damages applicable here is ... the difference between the unpaid balance of the principal and the market value of the property at the time of the breach." 39 P.2d at 372.

Rega argues that *Smith* should not apply to this case because, unlike the facts in *Smith*, Rega did not cause Dunkley to lose the land by foreclosure. We agree. The *Smith* court chose not to apply the traditional measure of damages because the traditional measure of damages presupposes that the nonbreaching party would be able to realize the property's market value by subsequently selling the property. In *Smith*, "[s]uch was not the case.... Rather, the second purchasers' breach of contract caused the first purchasers' entire interest in the property to be forfeited back to the original owners." 722 P.2d at 800.

Unlike the situation in *Smith*, Dunkley's loss of the property was not directly caused by Rega's breach. Independent from his agreement with Rega, Dunkley obtained a loan from Pacific. He secured the loan by executing a deed of trust to Pacific upon the properties still covered by the contract of sale to Rega. Because Dunkley later defaulted on his obligation to Pacific, he lost the land. Although Dunkley no longer possesses the land, this loss was not caused by Rega. Therefore, since this crucial fact is not present in this case, *Smith* is not applicable.

Moreover, applying *Smith* to this case would be inconsistent with the purpose of rejecting executory contracts under section 365. The purpose of allowing rejection of an executory contract under section 365 is to make the debtor's rehabilitation more likely. *Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1310 (5th Cir.1985). Also, "[r]ejection of an executory contract serves two purposes. It relieves the debtor of burdensome future obligations while he is trying to recover financially and it constitutes a breach of a contract which permits the other party to file a creditor's claim." *In re Norquist*, 43 B.R. 224, 225 (Bankr.E. D.Wash.1984). Given this purpose, the Fourth Circuit recently held that specific performance was not an available relief under section 365 because "it would undercut the core purpose of rejection." *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1048 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

Similarly, allowing recovery of the contract price would also undercut the purpose of rejection under section 365. As the district court pointed out in its memorandum decision, "[i]f the Court were to accept the argument made by the Dunkleys, that is that they were entitled to the balance due on the contract, presumptively in cash, what point would there be to a rejection of an executory contract under 11 U.S.C. § 365?" *Dunkley v. Rega Properties, Ltd. (In re Rega Properties, Ltd.)*, No. C–87–719 RJM, slip op. at 5–6 (E.D.Wa. Sept. 13, 1988).

Because the *Smith* measure of damages may not appropriately apply in this case under Washington law and because it appears inconsistent with the purpose of allowing the rejection of executory contracts under section 365, *Smith* does not apply to this case. We agree with the bankruptcy court that the *Reiter* measure of damages, which deducts the value of the property, is the appropriate measure of damages to apply to this case. Therefore, the district court did not err in affirming the bankruptcy court's determination of measure of damages resulting from the rejected executory contract between Rega and Dunkley.

### IV

Because we do not have jurisdiction under section 158(d), we dismiss Dunkley's appeal from that portion of the district court's order affirming the bankruptcy court's denial of his motion to dismiss. We affirm, however, that portion of the district court's order affirming the bankruptcy court's determination of damages.

Appellant will bear the costs.

AFFIRMED in part and DISMISSED in part.