**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: POMONA VALLEY MEDICAL
GROUP, INC.,

*Debtor,*

───────────────────────

CHANDRAHAS AGARWAL, M.D.,

*Appellant,*

v.

POMONA VALLEY MEDICAL GROUP,
INC., a California professional
corporation, d/b/a PROMED HEALTH
NETWORK,

*Appellee.*

No. 04-56334

D.C. No.
CV-01-10027-CBM

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Chief Judge, Presiding

Argued and Submitted
June 8, 2006—Pasadena, California

Filed January 17, 2007

Before: Dorothy W. Nelson, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge D.W. Nelson;
Dissent by Judge Rawlinson

667

**COUNSEL**

Henry R. Fenton, Law Offices of Henry R. Fenton, Los Angeles, California, briefed and argued for the appellant.

Randall J. Sherman, Stradling Yocca Carlson & Rauth, Newport Beach, California; and Garrick A. Hollander, Winthrop Couchot, Newport Beach, California, briefed for the appellee. Marc J. Winthrop, Winthrop Couchot, Newport Beach, California, briefed and argued for the appellee. Paul L. Gale, Stradling Yocca Carlson & Rauth, Newport Beach, California, argued for the appellee.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Chandrahas Agarwal ("Agarwal") appeals the district court's decision affirming (1) the bankruptcy court's order

rejecting his contract with Pomona Valley Medical Group, Inc., dba ProMed Health Network ("ProMed") and (2) the bankruptcy court's subsequent order dismissing Agarwal's complaint in an adversary proceeding against ProMed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm, in part, and reverse, in part.

## BACKGROUND[1]

On May 14, 1999, Chandrahas Agarwal, a primary care physician and certified cardiologist, entered into a provider agreement (the "Agreement") with ProMed, an "independent practice association"[2] in Southern California. Pursuant to the Agreement, Agarwal provided primary or basic medical services to patients in ProMed's network. When a patient required specialty medical services, such as cardiology tests, Agarwal was required to seek authorization from ProMed's medical director.

Under the Agreement, the twelve-month contract was extended automatically for an unlimited number of additional twelve-month periods, unless ProMed provided written notice of non-renewal.[3] At the end of its first term, the Agreement was extended to June 1, 2000, by the automatic renewal pro-

---

[1]As Agarwal is appealing the district court's order dismissing his complaint for failure to state a claim, we accept as true the factual allegations in Agarwal's Second Amended Complaint.

[2]An independent practice association (IPA) is an organization that contracts with individual physicians to provide services to the enrollees of managed health care plans (*i.e.*, preferred provider organizations (PPOs) and health maintenance organizations (HMOs)). The physician members maintain their own private practices and may see patients not enrolled in the health care plans with which the IPA has agreements. Carl H. Hitchner, et al., *Integrated Delivery Systems: A Survey of Organizational Models*, 29 WAKE FOREST L. REV. 273, 275 (1994).

[3]The Agreement also provided other options for severing the parties' relationship, including termination with or without cause. Each form of termination provided different notice and process requirements.

vision. Shortly after, on June 29, 2000, ProMed voluntarily filed for bankruptcy under Chapter 11.

Approximately six months later, ProMed began routinely denying initial authorization for cardiology tests Agarwal requested for his patients. After Agarwal protested, ProMed eventually authorized most of the procedures he requested. In April 2001, ProMed warned Agarwal that if he disagreed with or continued to protest ProMed's authorization policies he would be terminated. A month later, the company sent Agarwal written notice that it would not be retaining his services after the expiration of the second year of the Agreement. Although the Agreement's non-renewal provision did not require justification, the notice stated that Agarwal's frequent ordering of "unnecessary tests for patients simply to increase [his] compensation at ProMed's expense" justified termination with cause.

Following the expiration of the Agreement, Agarwal commenced adversary proceedings in bankruptcy court, alleging various California statutory and common law causes of action. Thereafter, ProMed moved to "reject" its executory contract with Agarwal and to dismiss his complaint for failure to state a claim. The bankruptcy court granted both motions but permitted Agarwal to file an amended complaint.[4] Agar-

---

[4]We note that the contract at issue here was, indeed, executory on June 29, 2000, which was the date ProMed filed its bankruptcy petition. To determine whether a contract may be rejected under 11 U.S.C. § 365(a), we look to whether the contract was executory at the time of the filing of the bankruptcy petition. *See, e.g.*, *In re Robert L. Helms Constr. & Dev. Co.*, 139 F.3d 702, 706 (9th Cir. 1998) (en banc) (holding that to determine whether a contract is executory, "we look to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform"); *In re Coast Trading Co.*, 744 F.2d 686, 692-93 (9th Cir. 1984) (holding that a contract is executory if at the time of the bankruptcy petition filing, the contract is not yet fully performed on both sides). Agarwal concedes that his contract with ProMed was executory when the bankruptcy petition was filed in this case; thus, ProMed could move to reject the contract under 11 U.S.C. § 365(a).

wal, instead, appealed to the district court, which affirmed the bankruptcy court's decisions. This timely appeal followed.

## DISCUSSION

We review de novo the district court's decision in a bankruptcy appeal. *In re Onecast Media, Inc.*, 439 F.3d 558, 561 (9th Cir. 2006). Therefore, we must consider independently the bankruptcy court's underlying ruling, applying the same standard of review as the district court. *Id.*

### I.  Rejection of the Executory Contract and the Business Judgment Rule

[1] As a preliminary matter, we hold that the bankruptcy court did not err in approving ProMed's rejection of its executory contract with Agarwal.[5] Under 11 U.S.C. § 365(a), a Chapter 11 debtor-in-possession, "subject to the court's approval, may . . . reject any executory contract." *See also In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702 (9th Cir. 1998) (en banc). In making its determination, a bankruptcy court need engage in "only a cursory review of a [debtor-in-possession]'s decision to reject the contract. Specifically, a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s rejection decision . . . ." *Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)); *see also In re Chi-Feng Huang*, 23 B.R. 798, 800 (9th Cir. BAP 1982) (citing cases).

---

[5]As explained *supra*, the contract was executory. *See In re Robert L. Helms*, 139 F.3d at 706. We need not determine whether we are persuaded that "events after the filing may cause the contract to be regarded as not executory when the motion to assume or reject was made, such as contracts which expired post-petition by their own terms after the date of filing but before the motion was heard." *In re Spectrum Info. Tech., Inc.*, 193 B.R. 400, 404 (E.D.N.Y. 1996) (internal alterations omitted) (citing cases). Assuming the allegations in Agarwal's complaint are true, his contract with ProMed did not expire by its own terms; it was terminated in violation of them.

**[2]** We have never had the occasion to define the contours of the business judgment rule in the bankruptcy context. However, courts are no more equipped to make subjective business decisions for insolvent business than they are for solvent businesses, so we have no difficulty concluding that its formulation in corporate litigation is also appropriate here. *See Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985) (adopting the corporate business judgment rule for bankruptcy proceedings).

**[3]** Thus, in evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate. *See Navellier v. Sletten*, 262 F.3d 923, 946 n.12 (9th Cir. 2001); *FDIC v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999); *see also In re Chi-Feng Huang*, 23 B.R. at 801 ("The primary issue is whether rejection would benefit the general unsecured creditors."). It should approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-possession's conclusion that rejection would be "advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol*, 756 F.2d at 1047. Such determinations, clearly, involve questions of fact, *see Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1307-08 (5th Cir. 1985); *Lubrizol*, 756 F.2d at 1047, which we review for clear error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005).

Turning to the instant case, ProMed justified its business decision, explaining, *inter alia*, that its Chapter 11 reorganization strategy included efforts to reduce costs by limiting the number of physicians in its network and severing relationships with physicians, like Agarwal, who created financial burdens by ordering treatment and tests ProMed considered unnecessary.

**[4]** We can discern no reason that ProMed's stated reorganization strategy was so unreasonable as to indicate it acted in bad faith or on whim or caprice in rejecting the Agreement. Nor has Agarwal offered any. He merely countered that, in making its determination to reject an executory contract, a debtor-in-possession must abide by state law health and safety regulations. We do not quarrel with this position. *See, e.g.*, *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 592 (9th Cir. 1993) (citation omitted) (holding that a bankruptcy trustee must "manage a business in accordance with state law, as any other person must"). However, Agarwal has failed to explain how ProMed's rejection of the Agreement violates California health and safety laws.

Agarwal also argued that in approving the decision to reject an executory contract the bankruptcy court must weigh equitable concerns. He urges us that "it is proper for the court to refuse to authorize rejection of a lease or executory contract where the party whose contract is to be rejected would be damaged disproportionately to any benefit to be derived by the general creditors of the estate . . . ." *In re Chi-Feng Huang*, 23 B.R. at 801. Again, we do not disagree. There may be cases where the disproportionate damage to the party whose contract is to be rejected demonstrates that the debtor-in-possession's decision could not be based on sound business judgment. Here, however, there is no such indication.

**[5]** We find it somewhat suspect that ProMed did not seek to reject the Agreement until Agarwal filed an adversary claim in the bankruptcy court, more than a year after ProMed filed its bankruptcy petition. However, after a hearing in which both Agarwal and ProMed presented their arguments and representations, the bankruptcy court found that the rejection of the Agreement was in the best interests of the bankruptcy estate and its creditors. That finding of fact necessarily indicates that the bankruptcy court believed ProMed's justifications for its actions. The bankruptcy court approval of ProMed's decision, which stated the decision was "within the

sound 'business judgment' of the [d]ebtor," also constitutes an implicit finding that ProMed did not act in bad faith or on whim or caprice. On appeal, Agarwal does not challenge these findings.[6]

**[6]** On the record before us, we do not have "the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Rains*, 428 F.3d at 900 (requiring the reviewing court to accept findings of fact unless it is definitely and firmly convinced that the finding was erroneous). Therefore, rejection of the Agreement was proper.

## II.   *Dismissal of Agarwal's Complaint*

**[7]** Our conclusion that rejection was proper does not end our inquiry. ProMed's rejection of the Agreement constituted a breach of that contract effective immediately before ProMed filed for bankruptcy on June 29, 2000. 11 U.S.C. § 365(g). As of that date, ProMed was relieved of its performance obligations under the Agreement, and Agarwal was permitted to file an unsecured claim for breach of contract. *In re Onecast Media, Inc.*, 439 F.3d at 563 (citing cases); *In re Pacific Express, Inc.*, 780 F.2d 1482, 1486 & n.3 (9th Cir. 1986).[7]

---

[6]As we discuss below, Agarwal does contend that ProMed's reasons for not renewing the Agreement were pretextual and that the real reason was retaliation. Clearly, retaliation may constitute bad faith. Agarwal raises this argument, however, not with respect to ProMed's decision to reject the contract but in relation to his substantive causes of action. Even if we borrowed Agarwal's retaliatory termination arguments in evaluating ProMed's decision under § 365(a), the bankruptcy court's implicit finding that ProMed did not act in bad faith necessarily belies Agarwal's argument that it did. Under the clear error standard of review, we are not persuaded that this finding was incorrect. *In re Rains*, 428 F.3d at 900.

[7]The dissent's assertions to the contrary notwithstanding, that ProMed's rejection of the Agreement was cautionary, and perhaps even superfluous, does not mean the rejection had no legal effect. Indeed, the rejection was intended to retroactively relieve the bankruptcy estate of obligations to perform under the contract. Such relief became effective immediately

Thus, accepting Agarwal's allegations as true, we must consider whether it appears beyond doubt that he can prove no set of facts in support of his claims that would entitle him to relief. *Zimmer v. PSB Lending Corp.*, 313 F.3d 1220, 1222 (9th Cir. 2002); *see also* Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(b)(6)).[8]

In his complaint, Agarwal asserts that ProMed's termination of the Agreement supported six causes of action:

> (1)   Retaliatory termination in violation of Cal. Bus. & Prof. Code § 2056;

> (2)   Violation of the notice and hearing requirements of Cal. Bus. & Prof. Code § 809, *et seq.*

---

before the petition for bankruptcy was filed on June 29, 2000. *See In re Rega Props., Ltd.*, 894 F.2d 1136, 1140 (9th Cir. 1990). Under 11 U.S.C. § 365(g)(1), the contract is deemed breached one day prior to the date on which the bankruptcy petition was filed, even if the term of the contract had expired.

Thus, by operation of law, ProMed's rejection of the contract, while retroactively effective to discharge its obligation to perform, created secondary rights of compensation in Agarwal, including rights for breach of contract. Although liability for breach of contract may have been an unforeseen consequence of ProMed's decision, a consequence it remains.

[8]In dismissing Agarwal's earlier complaints, the bankruptcy court explained,

> I really believe . . . that you can come up with a complaint that's going to survive a motion to dismiss. But . . . it will not be a complaint in the normal easy pleading ways of the initial parts of the Federal Rules of Civil Procedure. Instead, it will be [a] very specific, very carefully drafted complaint.

This requirement was patently improper. The pleading requirements in an adversary proceeding require only notice pleading—"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See* Fed. R. Bankr. P. 7008 (incorporating Rule 8's pleading rules).

(3)   Violation of California's common law right to fair procedure;

(4)   Breach of the notice requirements of the Agreement;

(5)   Unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and

(6)   Interference with prospective business advantage.[9]

**[8]** It immediately should be obvious that Agarwal's fourth cause of action, challenging as insufficient the notice provided in ProMed's letter, cannot survive a motion to dismiss for failure to state a claim. Because of its valid rejection of the contract, ProMed was relieved of its obligations under the notice provisions of the agreement. *In re Pacific Express, Inc.*, 780 F.2d at 1486 n.3 (noting that rejection allows the bankrupt's estate to avoid the requirements of the contract).

**[9]** We are convinced that ProMed's valid rejection of the Agreement also is fatal to Agarwal's second cause of action, alleging a violation of Cal. Bus. & Prof. Code § 809, and his third cause of action, which alleges a violation of California's common law right to fair procedure. Like the notice provisions of Agarwal's contract, these causes of action concern primarily the process by which a company decides to discharge a physician, not whether a physician may be discharged. *See Potvin v. Metropolitan Life Ins. Co.*, 997 P.2d 1153, 1158 (Cal. 2000) (when it applies, the right to fair procedure ensures that a decision is "both substantively rational and procedurally fair") (quoting *Pinsker v. Pac. Coast Soc'y of Ortho.*, 526 P.2d 253, 260 (Cal. 1974); Cal. Bus. & Prof.

---

[9]We do not consider the propriety of dismissing Agarwal's sixth cause of action, which was not discussed in Agarwal's opening brief. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Code § 809.1(a) & (c) (entitling certain physicians to written notice and a hearing before they are terminated).

**[10]** Section 365(a) gives debtors wide latitude in deciding whether to assume or reject a contract, which is inconsonant with the supplementary procedures imposed under California law. Moreover, it would be anomalous for § 365(a)—a provision aimed at relieving the debtor of burdensome performance obligations while it is trying to recover financially, *In re Onecast Media, Inc.*, 439 F.3d at 563—to force ProMed to provide sham notices and hearings from which Agarwal could expect no relief. Accordingly, we need not determine whether Agarwal's second, third, and fourth causes of action pass muster under the Federal Rule of Bankruptcy Procedure. Even assuming Agarwal's allegations were sufficient, he can prove no set of facts entitling him to the damages he seeks, so dismissal of these causes of action was proper.

**[11]** The rejection of an executory contract does not, however, otherwise affect the parties' substantive rights under the contract or state law. *See In re Onecast Media, Inc.*, 439 F.3d at 563 (citing 3 Collier on Bankruptcy § 365.09[1] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2005)). Accordingly, ProMed's rejection of the Agreement did not automatically extinguish Agarwal's other causes of action, and it is possible that he has stated a claim that survives under the Federal Rules of Bankruptcy Procedure. We examine each in turn.

Agarwal's first cause of action alleges retaliatory termination in violation of Cal. Bus. & Prof. Code § 2056, which provides that physicians cannot suffer "retaliation . . . [for] advocat[ing] for medically appropriate health care for their patients . . . ." Cal. Bus. & Prof. Code § 2056(a) & (c).

**[12]** In order to state a claim under § 2056, Agarwal must first allege that ProMed's "decision to terminate [his] employment or other contractual relationship . . . or otherwise penal-

ize [him was] principally for advocating for medically appropriate health care . . . ." Cal. Bus. & Prof. Code § 2056(c).[10] Agarwal's complaint states, "The real reason for PROMED's termination of Dr. Agarwal is that PROMED . . . wish[es] to maximize their profits at the patient's expense . . . . PROMED . . . perceive[s] Dr. Agarwal as 'too expensive' because Dr. Agarwal does not hesitate to order *necessary* and entirely proper medical tests for his patients, in the best interests of his patients." If proven, these allegations match precisely the first element of a retaliatory termination claim: Agarwal was terminated because his ordering medically appropriate health care made him "too expensive." Albeit unartful, these allegations are sufficient under liberal notice pleading standards.

Under § 2056, Agarwal must also allege either that he appealed ProMed's decision to deny payment for a service or that he protested a decision, policy, or practice that he "reasonably believe[d] impair[ed his] ability to provide medically appropriate health care to his . . . patients." Cal. Bus. & Prof. Code § 2056(b).[11] Again, Agarwal's allegations are sufficient.

---

[10]Subsection (c) provides:

> The application and rendering by any person of a decision to terminate an employment or other contractual relationship with, or otherwise penalize, a physician and surgeon principally for advocating for medically appropriate health care consistent with that degree of learning and skill ordinarily possessed by reputable physicians practicing according to the applicable legal standard of care violates the public policy of this state. No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy, nor shall any person prohibit, restrict, or in any way discourage a physician and surgeon from communicating to a patient information in furtherance of medically appropriate health care.

Cal. Bus. & Prof. Code § 2056(c).

[11]In relevant part, subsection (b) provides:

> It is the public policy of the State of California that a physician and surgeon be encouraged to advocate for medically appropriate

The complaint stated that Agarwal "advocat[ed] for patients and protest[ed] the denials and delays in authorization." Although Agarwal conceded that payment was ultimately authorized "[i]n most instances," nothing in § 2056 requires that a physician be *prevented* from providing medically appropriate health care. Rather, Agarwal must reasonably believe that ProMed's initial denials *impaired—i.e.*, damaged, injured, lessened, *see* Oxford English Dictionary (2d ed. 1989)—his ability to treat his patients. We must broadly construe his statements that he was required to provide "extensive oral and written justification" for "entirely necessary medical tests and procedures" and that authorization was delayed and "nearly always initially denied" as alleging just that. *See Khajavi v. Feather River Anesthesia Med. Group*, 100 Cal. Rptr. 2d 627, 638 (Cal. Ct. App. 2000) (finding an "unambiguous legislative intent to apply the statute broadly to protect physicians' exercise of their professional judgment in advocating for medically appropriate health care"); *id.* at 640 (deciding that there should be a "broad interpretation of the statute").

**[13]** For these reasons, the bankruptcy court erred in dismissing Agarwal's retaliation claim under Federal Rule of Bankruptcy Procedure 7012.

The bankruptcy court also erred in dismissing Agarwal's fifth cause of action, alleging unfair competition. California's

---

health care for his or her patients. For purposes of this section, "to advocate for medically appropriate health care" means to appeal a payor's decision to deny payment for a service pursuant to the reasonable grievance or appeal procedure established by a[n] . . . independent practice association . . . or to protest a decision, policy, or practice that the physician, consistent with that degree of learning and skill ordinarily possessed by reputable physicians practicing according to the applicable legal standard of care, reasonably believes impairs the physician's ability to provide medically appropriate health care to his or her patients.

Cal. Bus. & Prof. Code § 2056(b).

unfair competition statute prohibits any unfair competition, which means "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200, *et seq.*

**[14]** Thus, in order to state a claim for unfair competition, Agarwal must first allege that ProMed's termination of the Agreement was unlawful, unfair or fraudulent. An unlawful act is one "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994). Thus, stating a claim for retaliatory termination—an act forbidden by Cal. Bus. & Prof. Code § 2056—satisfies the requirement that Agarwal alleged an unlawful business act or practice.

Agarwal also advances an alternate theory of unfair competition. He alleges that ProMed's pretextual reason for terminating the Agreement was "misleading to the public in general" because, as a result, approximately fifty people believe he is a bad doctor, which is "entirely false." Although such allegations do not state a claim in *tort*, as used in § 17200, "fraudulent" does not refer to the common law tort of fraud. *Bank of the W. v. Superior Court*, 833 P.2d 545, 553 (Cal. 1992). Rather, Agarwal need allege only that "members of the public are likely to be deceived" by ProMed's business act or practice. *Id.* (quoting *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (Cal. 1976) (quotation marks omitted)). Clearly, the public is likely to be deceived by statements that are "entirely false."

On its face, the unfair *competition* statute also appears to require that Agarwal allege that he was in competition with ProMed. Agarwal does allege he was in competition with ProMed, but as a matter of law, we are not convinced that a member of an independent practice association may be considered to be in competition with that independent practice association. We need not resolve our concern here because, under the unfair competition statute, "competition between

the parties is not a prerequisite to relief. . . . Emphasis is . . . placed upon the word 'unfair' rather than on 'competition.' " *Ball v. Am. Trial Lawyers Ass'n*, 92 Cal. Rptr. 228, 303 (Cal. Ct. App. 1971) (internal citations omitted) (interpreting virtually identical definition of "unfair competition" in Cal. Civ. Code § 3369).

As the California courts have explained, the unfair competition statute is not limited to "conduct that is unfair to competitors." *People ex rel. Renne v. Servantes*, 103 Cal. Rptr. 2d 870, 881 (Cal. Ct. App. 2001) (citing *Barquis v. Merch. Collection Ass'n*, 496 P.2d 817 (Cal. 1972)). Indeed, in defining unfair competition, § 17200 refers to only business acts and practices, not competitive business acts or practices, and the term "embrac[es] *anything* that can properly be called a business practice." *Cel-Tech Comm., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999) (emphasis added) (quoting *Rubin v. Green*, 847 P.2d 1044, 1052 (Cal. 1993); *cf. Khoury v. Maly's of Calif.*, 17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993) (sustaining the trial court's demurrer under Cal. Bus. & Prof. Code § 17001 because "[t]he facts [did] not involve [any] . . . anticompetitive practice . . . because appellant is not in competition with respondent").

Moreover, at the time Agarwal initiated his adversary proceeding, the statute gave the right to challenge the unfair business practices to *any* citizen, even if he suffered no individualized injury. *See* Cal. Bus. & Prof. Code § 17204 (2003) (authorizing civil action to enforce § 17200 by "any person acting for the interests of itself, its members, or the general public"); *see also Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).[12]

---

[12]As a result of an amendment, the statute now provides that "a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' " *Californians for Disability Rights v. Mervyn's*, 46 Cal. Rptr. 3d at 60 (quoting Prop. 64, § 3).

**[15]** In light of these policies, we are convinced that competition—as that term is generally understood—is not an element of a claim under the unfair competition statute. We can, thus, discern no deficiency in Agarwal's pleading,[13] and we reverse the bankruptcy court's dismissal of Agarwal's unfair competition claim.

## CONCLUSION

For the foregoing reasons, the district court's decision is

**AFFIRMED**, in part, **REVERSED**, in part, and **REMANDED**.
Each party shall bear their own costs.

---

RAWLINSON, Circuit Judge, dissenting in part:

I respectfully dissent from that portion of the majority opinion holding that ProMed's valid rejection of the Agreement between ProMed and Chandrahas Agarwal constituted a breach of that contract.

The contract between Agarwal and ProMed provided for non-renewal of the contract if written notice of non-renewal was given. ProMed complied with the non-renewal provision of the contract, resulting in non-renewal of the contract. ProMed only sought rejection of the contract as a cautionary measure in response to the filing of an adversary proceeding by Agarwal. The fact that ProMed filed a superfluous motion

---

[13]California Business & Professional Code § 17203 allows a court to enjoin a party from engaging in past behavior that amounted to unfair competition. Because Agarwal has alleged that members of the public have been deceived by ProMed's unfair business act or practice, and he seeks injunctive relief in his Fifth Cause of Action, Agarwal's Fifth Cause of Action states a claim as to which relief can be granted.

to reject a contract that had not been renewed does not support a finding of breach.