# FILED

FEB 11 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-19-1039-STaF |
| | CC-19-1040-STaF |
| MAGGIE LIU, | |
| | Bk. No.  8:17-bk-12832-CB |
| Debtor. | |
| | Adv. No. 8:18-ap-01066-CB |
| VINCENT JUE, | |
| Appellant, | |
| v. | **OPINION** |
| MAGGIE LIU; RICHARD A. MARSHACK, Chapter 7 Trustee; RUTAN & TUCKER, LLP; YU HUO; U.S. TRUSTEE, | |
| Appellees. | |

Argued and Submitted on September 26, 2019
at Pasadena, California

Filed – February 11, 2020
Appeals from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:    Kathleen P. March of The Bankruptcy Law Firm, P.C. argued for appellant; David Edward Hays of Marshack Hays LLP argued for appellee Richard A. Marshack, Chapter 7 Trustee.

———————

Before: SPRAKER, TAYLOR, and FARIS, Bankruptcy Judges.

Opinion by Judge Spraker
Concurrence by Judge Taylor

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Vincent Jue appeals from two orders. First, he appeals from an order entered in the main bankruptcy case denying a motion to dismiss debtor Maggie Liu's chapter 7[1] bankruptcy pursuant to § 109(g)(2). And second, he appeals from a summary judgment entered in an adversary proceeding avoiding as preferential his attachment lien perfected shortly before Liu's commencement of her chapter 7 case. Even though these two rulings occurred in distinct bankruptcy proceedings, Jue claims the latter ruling - the summary judgment – triggered the finality of the former – the denial of the motion to dismiss.

Jue chose to appeal the denial of the dismissal motion only after the

———————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

bankruptcy court entered summary judgment in the preference action. Jue contends that his appeal was timely because the order denying his motion was interlocutory when it was entered. We disagree. While orders denying some types of case dismissal motions are considered interlocutory, a recent Ninth Circuit decision, *Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 873 F.3d 1060 (9th Cir. 2017), held that the denial of a § 707(b) motion to dismiss is final and immediately appealable. There is no basis for us to depart from or distinguish this Ninth Circuit authority. Based upon *In re Cherrett,* we hold that the appeal of the denial of the § 109(g)(2) dismissal motion was untimely filed and must be DISMISSED for lack of jurisdiction. We publish because there are no other cases from within this circuit determining the finality of an order denying a § 109(g)(2) dismissal motion.

As for the appeal from the summary judgment, Jue focuses on the bankruptcy court's rejection of his affirmative defenses. But none of these defenses justify reversal. The only substantive defenses available to a preference defendant are those enumerated in the preference statute. Jue's defenses are not among the enumerated defenses. Additionally, many of his defenses amount to an impermissible collateral attack on the order denying Jue's § 109(g)(2) motion to dismiss. Finally, Jue's arguments that the creation of his attachment lien relates back to events outside the 90-day preference period are not supported by applicable law. Accordingly, we AFFIRM the bankruptcy court's summary judgment in favor of the trustee

in the preference action.[2]

## FACTS

**A.    Liu's First Bankruptcy Case And The State Court Lawsuits Against Her.**

In March 2017, Liu commenced her first bankruptcy case by filing a chapter 13 petition. Within days of commencement of that case, Jue and another creditor, Yu Huo, separately moved for relief from the automatic stay. Jue sought to proceed with two lawsuits against Liu pending in the Orange County Superior Court, which the state court had consolidated for trial. Jue had commenced his first lawsuit in June 2015, asserting causes of action for breach of promissory note, fraud, conversion, and fraudulent transfer of personal property. Jue alleged that Liu induced him to loan her money under false pretenses.

In furtherance of this lawsuit, Jue had obtained a right to attach order and a writ of attachment. Jue provided the writ of attachment to the Orange County Sheriff for recording in the county's real property records. However, before the Sheriff could record the document, Liu transferred legal title in her residence to her daughters. This led to Jue's second lawsuit, filed in November 2015, seeking to avoid Liu's transfer of her residence as a fraudulent transfer. On November 30, 2015, shortly after

---

[2] On September 26, 2019, Jue filed a supplemental brief. The Panel neither authorized, nor requested, supplemental briefing. Jue's September  26, 2019, supplemental brief is hereby ORDERED STRICKEN.

4

filing his second lawsuit, Jue recorded a lis pendens against the transferred residence.

Liu's chapter 13 bankruptcy filing stayed the consolidated trial in Jue's state court lawsuits. Additionally, Liu's chapter 13 schedules indicated that Liu's daughters reconveyed the real property to her before her chapter 13 filing, as she listed a fee simple interest in the residence in her Schedule A/B. On April 5, 2017, the bankruptcy court entered an order granting Jue relief from stay, permitting him to proceed with his state court lawsuit for breach of the promissory note and fraud.[3]

Huo also moved for relief from stay. Her motion told a similar story. Prior to Liu's chapter 13 bankruptcy filing, Huo commenced a lawsuit in the Orange County Superior Court for fraud, conversion, breach of fiduciary duty, unjust enrichment, breach of contract, and fraudulent transfer. Huo alleged that Liu misappropriated $1,000,000.00 entrusted to her for investment purposes. Trial was set to begin on March 15, 2017, the day after Liu filed her chapter 13 petition. According to Huo, Liu's bankruptcy was one of several ploys to delay trial. After hearing Huo's motion on an expedited basis, the bankruptcy court entered an order on April 6, 2017, granting her relief from stay to proceed with the state court action.

---

[3] In light of the reconveyance of the residence to Liu, Jue voluntarily dismissed his fraudulent transfer action, with prejudice, on July 12, 2017.

On May 3, 2017, Liu requested dismissal of her chapter 13 case. The next day, the bankruptcy court entered an order dismissing the case.

**B.      Liu's Second Bankruptcy Case And The § 109(g)(2) Motion To Dismiss.**

On July 17, 2017, Liu filed a chapter 7 bankruptcy petition. In the interim between the two bankruptcy cases, Huo obtained a money judgment against Liu and was in the process of enforcing that judgment by arranging for a sheriff's sale of Liu's residence. As for Jue, during the interim between the two bankruptcy cases, he recorded his writ of attachment against Liu's residence on June 5, 2017, thereby creating an attachment lien against the residence. In addition, Jue and Liu stipulated to entry of a money judgment for $480,000 in the original action brought by Jue.

Huo moved to dismiss the chapter 7 case. Huo contended that Liu's chapter 7 petition was filed in contravention of § 109(g)(2). This statute provides that an individual is ineligible for relief under the Bankruptcy Code if he or she has been a debtor in another case within 180 days and obtained a voluntary dismissal of the prior case after the filing of a motion for relief from the automatic stay. Liu filed her chapter 7 petition 74 days after the voluntary dismissal of her chapter 13 case.

Jue joined in Huo's motion to dismiss. The underlying basis for the joinder was essentially the same as stated in the motion. Jue also relied on § 109(g)(2).

6

Both the United States Trustee and the chapter 7 trustee opposed the motion to dismiss. The United States Trustee pointed to irregularities in Liu's schedules, which included inconsistent statements of income, allegedly valueless overseas real property holdings, and large "loans" from relatives made shortly before the bankruptcy filing even though Liu claimed to have little or no cash on hand as of the date of her petition.

These and other concerns regarding Liu's conduct led the United States Trustee to conclude that the bankruptcy court should exercise its discretion under § 109(g)(2) to **not** dismiss Liu's chapter 7 case. According to the United States Trustee, keeping Liu in chapter 7 bankruptcy would permit him and the chapter 7 trustee to complete a full and thorough review of the case and to investigate Liu's alleged misconduct. Under these circumstances, the United States Trustee maintained that it would be unjust and illogical to dismiss the case pursuant to § 109(g)(2).

In contrast, the chapter 7 trustee's opposition to the dismissal motion focused on four liens that were placed on Liu's residence during the 90-day preference period preceding her chapter 7 bankruptcy filing. The liens included Jue's $140,371.16 attachment lien and Huo's $704,043.90 judgment lien.[4] The chapter 7 trustee noted that these liens, unless avoided, would fully consume the $1 million in equity in the residence. Therefore, the

---

[4] The other two liens were: (1) a $118,382.00 deed of trust in favor of Mei-Ling Su; and (2) a $400,000.00 deed of trust in favor of Qiang Li. In addition to these four recent liens, Liu's schedules referenced a $375,000.00 first deed of trust.

chapter 7 trustee reasoned that the bankruptcy court should exercise its discretion to deny the dismissal motion so that he could seek to avoid the preferential liens and administer the residence for the benefit of all of the estate's unsecured creditors.

After hearing the matter, the bankruptcy court adopted the reasoning of the United States Trustee and the chapter 7 trustee, and denied the dismissal motion. According to the court, allowing the chapter 7 case to proceed would promote the Bankruptcy Code's policy of ratable distribution to creditors while also facilitating civil and criminal investigation into any alleged misconduct in Liu's bankruptcy cases.

The bankruptcy court entered its order denying the motion to dismiss on September 26, 2017. Neither Jue nor Huo immediately appealed this order.

## C.    The Trustee's Preference Adversary Proceeding.

In April 2018, the chapter 7 trustee commenced an adversary proceeding against Jue.[5] The trustee alleged that Jue's recording of his writ of attachment created an attachment lien against Liu's residence within 90 days of Liu's chapter 7 bankruptcy filing. The trustee also alleged that, unless avoided, this lien would enable Jue to receive more than he would in Liu's chapter 7 case absent the lien. The trustee thus concluded that the attachment lien was an avoidable preferential transfer.

---

[5] The record indicates that Huo stipulated to avoidance of her judgment lien.

In his answer to the complaint, Jue alleged several affirmative defenses, including unclean hands, estoppel, and waiver. Each of these defenses was based on the chapter 7 trustee's opposition to the motion to dismiss. Jue insisted that such opposition was wrongful and entitled him to relief from the avoidance action.

Jue further asserted that the attachment lien should be treated as having arisen before the 90-day preference period. He urged that the attachment lien related back to the date the state court issued its right to attach order. Alternatively, Jue argued that the attachment lien related back to the date he recorded his lis pendens in the fraudulent transfer action. Finally, Jue asserted that equity demanded the court protect him as an innocent party from the consequences of Liu's misconduct, which directly led to the court's denial of the § 109(g)(2) motion to dismiss.

The bankruptcy court heard the parties' cross-motions for summary judgment. The bankruptcy court ruled in favor of the trustee and against Jue. In the process, the bankruptcy court effectively rejected all of Jue's affirmative defenses.

On February 21, 2019, Jue filed a notice of appeal from the bankruptcy court's oral rulings on the cross-motions for summary judgment. On that same date, Jue filed a separate appeal from the September 26, 2017 order denying the motion to dismiss Liu's bankruptcy case. On April 3, 2019, the bankruptcy court entered its judgment avoiding

and preserving Jue's attachment lien. On April 4, 2019, Jue filed an amended notice of appeal covering the final judgment in the adversary proceeding.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (F). Subject to the jurisdictional discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did Jue timely appeal the order denying the § 109(g)(2) dismissal motion?

2.     Did the bankruptcy court err when it granted summary judgment in favor of the trustee in the preference adversary proceeding?

## STANDARD OF REVIEW

Timeliness is a jurisdictional issue that we consider de novo. *Wilkins v. Menchaca (In re Wilkins)*, 587 B.R. 97, 100 (9th Cir. BAP 2018). We also consider de novo appeals from grants of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015).

When we conduct a de novo review, we consider the matter anew, as if the bankruptcy court had not previously resolved it. *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

## DISCUSSION

**A. Jurisdictional Issue - Finality And Timeliness Of Appeal From The Order Denying Case Dismissal Motion**.

**1. Finality In Bankruptcy Cases - Generally.**

Finality is a critical component of bankruptcy appellate jurisdiction. *See Phillips v. Gilman (In re Gilman)*, 887 F.3d 956, 961 (9th Cir. 2018). Ordinarily, a federal court order is final, and therefore appealable, when "the decision presented for review 'ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment.'" *Gugliuzza v. Fed. Trade Comm'n (In re Gugliuzza)*, 852 F.3d 884, 890 (9th Cir. 2017) (quoting *Congrejo Invs., LLC v. Mann (In re Bender)*, 586 F.3d 1159, 1163 (9th Cir. 2009)).

However, the Ninth Circuit takes a pragmatic or flexible approach to finality in bankruptcy cases. *See Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.)*, 894 F.2d 1136, 1138 (9th Cir. 1990). This approach to finality is driven by the realization that "'certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be [immediately] appealable as of right.'" *Id.* (quoting *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.)*, 833 F.2d 797, 800 (9th Cir. 1987)).

The test for finality in bankruptcy typically asks two questions: (1) whether the bankruptcy court's order fully and finally determined the

discrete issue or issues it addressed; and (2) whether it "resolves and seriously affects substantive rights." *Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1126 (9th Cir. 2016) (quoting *SS Farms, LLC v. Sharp (In re SK Foods, L.P.)*, 676 F.3d 798, 802 (9th Cir. 2012)). This Panel applies the same finality test used by the Ninth Circuit. *See Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 523 B.R. 660, 665 (9th Cir. BAP 2014), *as corrected*, (Nov. 18, 2014), *aff'd*, 873 F.3d 1060 (9th Cir. 2017).[6]

Using this finality standard, the Ninth Circuit has found many different types of bankruptcy court orders to be final. *See, e.g., In re Cherrett*, 873 F.3d at 1065 (order denying motion to dismiss case under § 707(b)); *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 769 (9th Cir. 2008) (case conversion order); *Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 837 (9th Cir. 2008) (order removing chapter 7 trustee for cause); *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777, 780

---

[6] In some cases, the Ninth Circuit has applied a different, four part finality test that looks at the following concerns: "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *In re Perl*, 811 F.3d at 1126 (quoting *Sahagun v. Landmark Fence Co. (In re Landmark Fence Co.)*, 801 F.3d 1099, 1102 (9th Cir. 2015)). The Ninth Circuit has held that this four-part test should be applied only in appeals from district court or BAP decisions remanding to the bankruptcy court for further findings. *Id.* at 1126; *see also Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, __ F.3d ___, slip op. at 6 (9th Cir. Feb. 10, 2020) (stating that BAP decisions are not final when they remand for factual determinations on key issues). In contrast, when the district court or the BAP affirms or reverses the bankruptcy court without remanding, the Ninth Circuit applies the standard two-part test set forth above. *In re Perl*, 811 F.3d at 1126.

(9th Cir. 1999) (order approving sale of estate assets); *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1044 (9th Cir. 1997) (order for disgorgement of bankruptcy counsel's attorney's fees); *Turgeon v. Victoria Station Inc. (In re Victoria Station Inc.)*, 840 F.2d 682, 683–84 (9th Cir. 1988) (order denying motion to assume real property lease).

The Supreme Court has recognized that "the ordinary understanding of 'final decision' is not attuned to the distinctive character of bankruptcy litigation." *Ritzen Grp., Inc. v. Jackson Masonry,LLC*, 2020 WL 201023 *2, __ S.Ct. __ (Jan. 14, 2020); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1692-93 (2015). In *Bullard*, the Supreme Court considered the finality of an order denying confirmation of a chapter 13 plan for appeal. The Court explained the differences inherent in bankruptcy matters from more traditional litigation cases:

> The [finality] rules are different in bankruptcy. A bankruptcy case involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. Accordingly, Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case. The current bankruptcy appeals statute reflects this approach: It authorizes appeals as of right not only from final judgments in cases but from "final judgments, orders, and decrees . . . in cases and proceedings." § 158(a).

*Id.* at 1692 (non-statutory citations and some internal quotation marks omitted).

Ultimately, the Court found that the relevant "proceeding" for purposes of finality within the bankruptcy was the confirmation process as a whole. Denial of the chapter 13 plan was not final because "only plan confirmation - or case dismissal - alters the status quo and fixes the rights and obligations of the parties." *Id.* at 1692. Despite denial of the plan the debtors could continue with the plan process, so that "[d]enial of confirmation with leave to amend, by contrast, changes little." *Id.* at 1693.[7]

Applying *Bullard*, the Supreme Court recently held that denials of relief from stay were final for purposes of appeal. In *Ritzen Grp., Inc.*, the Court again noted the difficulties in applying traditional concepts of finality to bankruptcy decisions. Recognizing the often interdependent nature of bankruptcy decisions, the Court remarked that "[d]elaying appeal until the termination of the entire bankruptcy case, therefore, could have this untoward consequence: Reversal of a decision made early on could require the bankruptcy court to unravel later adjudications rendered

_____

[7] After *Bullard*, the Ninth Circuit has held that its four-part bankruptcy finality test does not permit it to treat as final district court or BAP remands solely because they involve purely legal questions the resolution of which would materially aid the bankruptcy court's decisional process. *In re Gugliuzza*, 852 F.3d at 897-98. According to *In re Gugliuzza*, a decision that remands a case for further findings will rarely "finally dispose of [a] discrete dispute [] within the larger case." *Id.* at 897 (citing *Bullard*, 135 S. Ct. at 1692). Moreover, *In re Gugliuzza* read *Bullard* to adopt a general rule "that only decisions that alter the status quo or fix the parties' rights and obligations could be appealed." *Id.* The Ninth Circuit has held, however, that its two-part finality test generally is consistent with *Bullard*. *In re Gilman*, 887 F.3d at 962-63.

in reliance on an earlier decision." 2020 WL 201023, at *2. The Court then concluded that relief from stay motions presented a discrete, independent "proceeding" that qualified as final for purposes of appeal. In doing so, the Court rejected the argument that motions for relief from stay merely determined the appropriate forum for the larger process of claims adjudication recognizing that stay relief decisions "can significantly increase creditors' costs." *Id*. at *5. Similarly, the Court rejected concerns regarding piecemeal appeals pointing to the substantial resources expended on subsequent litigation of the creditor's claim in the bankruptcy and confirmation of the debtor's plan of reorganization that flowed from the denial of relief from stay. Rejecting the request to restart the litigation on the moving creditor's claim, the Court observed that "[t]he second bite Ritzen seeks scarcely advances the finality principle." *Id*. at *7.

Though the need for an expanded concept of finality for bankruptcy decisions is well established, the bankruptcy finality standard is not without its downside. Every time an appellate court declares that a certain type of order is flexibly final and hence immediately appealable, it has the potential to erode whatever certainty there is concerning the timely commencement of an appeal. The stakes could not be higher. Failure to timely appeal a final order is a jurisdictional defect, which deprives the appellate court of the power to review the order. *See Ozenne v. Chase Manhattan Bank (In re Ozenne)*, 841 F.3d 810, 814 (9th Cir. 2016) (en banc); *In*

*re Wilkins*, 587 B.R. at 107. Thus, for every type of bankruptcy order for which the prevailing finality standard permits immediate review, there is a potential trap for the unwary litigant: the failure to recognize that a particular type of bankruptcy order is final and immediately appealable typically means that the litigant will miss the appeal deadline and lose his or her right and ability to appeal. *Ritzen Grp, Inc.*, 2020 WL 201023, at *3 ("an erroneous identification of a final order as interlocutory may cause a party to miss the appellate deadline").

This situation, however, is not new. The Ninth Circuit has long advised litigants in bankruptcy who are unsure about the finality of an order to file a notice of appeal to preserve their rights whether the matter was final or interlocutory. *See Ryther v. Lumber Products, Inc. (In re Ryther)*, 799 F.2d 1412, 1414 (9th Cir. 1986); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003) ("In *Ryther*, we noted that if a litigant is unsure about the nature of an order, the litigant should file both a notice to appeal and a motion for leave to appeal before the BAP or district court.").

2. **Finality Of Orders Denying Motions To Dismiss Bankruptcy Cases.**

a. **Traditional Application**.

"Ordinarily, orders denying a motion to dismiss would not constitute final, appealable orders because they do not 'end[ ] the litigation on the

16

merits and leave[ ] nothing for the court to do but execute the judgment.'" *In re Cherrett*, 873 F.3d at 1064-65 (quoting *In re Landmark Fence Co.*, 801 F.3d at 1102). In the bankruptcy appeal context, the Ninth Circuit traditionally has held that denials of a motion to dismiss the bankruptcy are interlocutory because the appellants would not be irreparably harmed in the absence of an immediate appeal. *See Farber v. 405 N. Bedford Dr. Corp. (In re 405 N. Bedford Dr. Corp.)*, 778 F.2d 1374, 1377-79 (9th Cir. 1985) (denial of dismissal of chapter 11 case for bad faith); *In re City of Desert Hot Springs*, 339 F.3d at 790 (denial of dismissal of chapter 9 for bad faith); *In re Rega Props., Ltd.*, 894 F.2d at 1138–39 (denial of dismissal of chapter 11 for bad faith).

*In re 405 N. Bedford Dr. Corp.* is particularly instructive. There, the Ninth Circuit dismissed as interlocutory an appeal from the denial of a motion to dismiss a bankruptcy case under § 1112(b) for bad faith. In assessing the finality of the denial of the dismissal motion, *In re 405 N. Bedford Dr. Corp.* focused upon the absence of a need for immediate appellate review to prevent irreparable harm:

> Although the beneficiaries will have to continue their participation in the reorganization process, their interests will be protected while they participate. . . . As secured creditors, the beneficiaries can protect their interests by moving the bankruptcy court to provide them adequate protection as defined by 11 U.S.C. § 361, or by

17

> seeking relief from the automatic stay under 11
> U.S.C. § 362(d) if such protection is not provided.

*In re 405 N. Bedford Dr. Corp.*, 778 F.2d at 1377.

The Ninth Circuit distinguished the continuation of the chapter 11 case before it from other instances where it permitted immediate appeal despite the continuation of the bankruptcy. Citing *Mason v. Integrity Ins. Co. (In re Mason),* 709 F.2d 1313 (9th Cir. 1983), the court noted that an appeal from the denial of a debtor's motion to vacate the order for relief in an involuntary chapter 7 bankruptcy case was sufficiently final to warrant an immediate appeal for two reasons. First, the procedures surrounding an involuntary bankruptcy were similar to those employed in other civil and criminal litigation that result in a final judgment. Therefore, the court reasoned, the procedural framework suggested that an order for relief should be treated as final. *In re 405 N. Bedford Dr. Corp.*, 778 F.2d at 1378. Second and more importantly, the Ninth Circuit found that, once the order for relief was entered, there were no statutory provisions adequately protecting involuntary debtors against irreparable injury from the continuation of the bankruptcy.[8] *Id.*

---

[8] *In re 405 N. Bedford Dr. Corp.* also distinguished orders denying relief from stay from orders denying dismissal. It explained that orders denying relief from stay were final and appealable because they "will frequently cause [the creditor] irreparable harm if he has to wait to the end of the bankruptcy case to appeal." 778 F.2d at 1379 (citing *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.)*, 734 F.2d 426 (9th Cir. 1984)). *Accord Ritzen Grp., Inc.,* 2020 WL 201023, at *6 (observing that excluding denials of relief from stay from immediate appeal "would force creditors who lose

(continued...)

Indeed, the Ninth Circuit in *In re Mason* specifically found "the other protections under the Bankruptcy Code insufficient to outweigh the **potential** for irreparable injury once an order for relief is entered." *In re Mason*, 709 F.3d at 1317-18 (emphasis added). Pertinent to the instant matter on appeal, *In re Mason* held that immediate review was appropriate because:

> An order for relief, being a conclusive determination of the debtor's status as bankrupt, carries with it a **great potential** for irreparable injury if immediate appeal is not allowed. An order for relief effectively divests the debtor of his assets, creating an estate controlled by the bankruptcy court. In a Chapter 7 case the trustee is obligated to gather the assets of the estate, liquidate them, and to the extent possible satisfy creditors' claims. The debtor is then discharged, 11 U.S.C. § 727, and the case closed, 11 U.S.C. § 350. During the administration of the estate the debtor's rights are limited. On entry of the order for relief he loses control of his assets, which may include a business. A debtor may possibly attack the propriety of every sale by appeal, but to effectively do so he must seek to stay the sale.

*Id.* at 1317 (emphasis added and internal citations and quotations omitted).

### b. *In re Cherrett.*

In *In re Cherrett*, a creditor moved to dismiss the debtors' chapter 7

---

[8](...continued)
stay-relief motions to fully litigate their claims in bankruptcy court and then, after the bankruptcy case is over, appeal and seek to redo the litigation all over again in the original court.")(*quoting Ritzen Grp. Inc. v. Jackson Masonry, LLC (In re Jackson Masonry, LLC)*, 906 F.3d 494, 503 (6th Cir. 2018)).

bankruptcy under § 707(b) for abuse.[9] 523 B.R. at 664-65. The creditor argued that § 707(b) applied because the Cherretts' debts were primarily consumer. The bankruptcy court disagreed and denied the motion to dismiss. *Id.* at 665. On appeal, the BAP held that the order was final for review. *Id.* at 666. The BAP noted that although the Ninth Circuit had not yet addressed the finality of orders denying motions to dismiss under § 707(b), the First, Third, Fourth, Fifth, Seventh and Eighth Circuits "consider such orders to be final based on practicality, judicial efficiency and other pragmatic considerations."*Id*.  Citing various comments from these decisions, the BAP held that the denial of the dismissal motion was final, reasoning:

> If such an order is not considered final, the moving party and the debtor will have to wait until the case is completed, which wastes debtor resources that should be used to pay creditors, and forces trustees and bankruptcy courts to expend their scarce institutional resources on abusive Chapter 7 petitioners. Moreover, postponing the appeal until the end of the bankruptcy case could result in the need to unwind various administrative actions, likely with some difficulty (e.g., having to revoke the debtor's discharge, potentially compelling creditors to disgorge distributions made by the trustee).

*Id*. at 667 (citations and internal quotation marks omitted).

---

[9] As amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23, § 707(b) presumes that a chapter 7 case is abusive, and should be dismissed, unless the debtor is able to satisfy the "means test" also set forth in the amended statute. *See McDow v. Dudley*, 662 F.3d 284, 288 (4th Cir. 2011) (describing 2005 amendments to § 707(b)).

The Ninth Circuit affirmed, also relying on the decisions of its sister circuits and noting: "[t]hese circuits recognize that the current version of § 707(b) . . . 'manifest[s] a congressional policy to police all Chapter 7 cases for abuse at the outset of a Chapter 7 proceeding.'" *In re Cherrett*, 873 F.3d at 1065 (quoting *McDow*, 662 F.3d at 288). It further pointed to the other circuits' focus on "'pragmatic considerations that indicate that the denial of a § 707(b) motion to dismiss is different from the denial of other motions to dismiss.'" *Id.* (quoting *McDow*, 662 F.3d at 288).

The Ninth Circuit did not expressly consider whether any harm or injury would arise if the appellant creditor were forced to wait until the end of the bankruptcy case to appeal the denial of its § 707(b) dismissal motion.[10] Instead, it focused on "policies of judicial efficiency and finality"

---

[10] *In re Cherrett*'s finality analysis in large part relied on *McDow*, 662 F.3d at 287-90, which also considered the finality of an order denying dismissal of a bankruptcy under § 707(b) and emphasized the pragmatic harm that would result if appellate review was delayed until completion of the bankruptcy case:

> Delaying appellate consideration of abuse could frustrate both principles of judicial economy and Congress's goal of ensuring that debtors allocate as much of their resources as possible toward repaying their debts. The resources of the debtor could be wasted in completing the bankruptcy proceeding before finally resolving the abuse issue. Requiring trustees to complete Chapter 7 proceedings before appealing denial of their § 707(b) motions wastes debtor resources that should be used to pay creditors, and forces trustees and bankruptcy courts to expend their scarce institutional resources on abusive Chapter 7 petitioners.

*Id.* at 290 (citations and internal quotation marks omitted).

to conclude that the denial of dismissal was a final order. *Id.* (quoting *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 911 (9th Cir. 1988)). The court found that these policies justified treating the denial of appellant's § 707(b) dismissal motion as final, explaining:

> "Section 707(b) creates a statutory gateway based on whether the case is abusive, and an order denying that motion to dismiss as abusive, in effect, finally and conclusively resolves the issue. If the denial of a § 707(b) motion to dismiss cannot be appealed immediately. . . , the Chapter 7 proceedings would have to be completed before it could be determined whether the proceedings were abusive in the first place."

*In re Cherrett*, 873 F.3d at 1065 (quoting *McDow*, 662 F.3d at 289–90).

### 3. Finality In This Appeal: The Order Denying Dismissal Of The Chapter 7 Bankruptcy Under § 109(g).

Having set forth the relevant legal framework, we consider the order on appeal: the denial of Jue's § 109(g)(2) motion to dismiss Liu's chapter 7 bankruptcy case.

#### a. Language And Effect Of § 109(g)(2).

In assessing whether the denial of the § 109(g)(2) dismissal motion is final, we must consider the language and effect of the statute. *Cf. McDow*, 662 F.3d at 287-90. Section 109(g) provides:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if--

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

Congress enacted § 109(g)(2) to prevent a specific type of abusive bankruptcy filing: serial bankruptcies filed merely as a means of obtaining repeated bankruptcy stays in order to frustrate creditors' efforts to enforce their rights and interests under state law. *Greenwell v. Carty (In re Carty)*, 149 B.R. 601, 603 (9th Cir. BAP 1993) (identifying the "obvious thrust" of the statute as preventing debtors from denying creditors the benefit of a stay termination by filing another bankruptcy case); *see also In re Hieter*, 414 B.R. 665, 669 (Bankr. D. Idaho 2009) (noting that Congress enacted § 109(g)(2) to prevent abusive repeat filings).

Eligibility under § 109(g), however, is not jurisdictional and can be waived if not raised. *Leafty v. Aussie Sonoran Capital, LLC (In re Leafty)*, 479 B.R. 545, 550 (9th Cir. BAP 2012) (§ 109(g)(2) is not jurisdictional); *see also Soames Lane Tr. v. Gonzalez (In re Soames Lane Tr.)*, BAP No. CC–16–1042–FDKu, 2016 WL 4198426 * 4 (9th Cir. BAP Aug. 8, 2016) ("This Panel has repeatedly held that the bankruptcy court has subject matter jurisdiction even if the debtor is ineligible under § 109."). Additionally, we have previously recognized that bankruptcy courts may suspend this

23

eligibility requirement in those limited situations where "mechanical application of § 109(g) would produce an illogical, unjust, or capricious result, or when the benefit of a dismissal would inure to a bad faith creditor." *In re Leafty*, 479 B.R. at 551 (citing *Home Sav. of Am., F.A. v. Luna (In re Luna)*, 122 B.R. 575, 576 (9th Cir. BAP 1991)).

### b. Jue's Arguments On Finality.

Jue argues that *In re Cherrett* is limited to denials of dismissal motions under § 707(b). He contends that *In re 405 N. Bedford Dr. Corp.* states the general rule that decisions that enable a bankruptcy case to continue are not final, even under the bankruptcy finality standard. In support of his argument, Jue cites our decision in *Moen v. Hull (In re Hull)*, 251 B.R. 726 (9th Cir. BAP 2000), in which we reviewed a denial of a creditor's motion to dismiss under § 109(e) and the bankruptcy court's determination that the debtor did not exceed the debt limits for chapter 13 eligibility. After denial of the motion to dismiss, the bankruptcy court confirmed the debtor's chapter 13 plan. Upon confirmation, the creditor appealed, challenging both the debtor's eligibility for chapter 13 as well as confirmation of the plan. *Id.* at 730.

As a preliminary matter, we noted that confirmation of the chapter 13 plan implicitly determined eligibility as it was a prerequisite for confirmation. *Id.* at 730-31. Therefore, the bankruptcy court's eligibility ruling was, at least implicitly, treated as interlocutory and became final

24

only upon entry of an order confirming the chapter 13 plan. *Id.*

*In re Hull* does not assist Jue. In *In re Hull*, the creditor appealed the § 109(e) eligibility determination after confirmation. Confirmation of the chapter 13 plan effectively "closed" the case for finality purposes. *See Giesbrecht v. Fitzgerald (In re Giesbrecht),* 429 B.R. 682, 688 (9th Cir. BAP 2010) ("the interlocutory Order Denying Confirmation merged into the court's final [chapter 13] confirmation order, and is sufficient to support appellate jurisdiction of the earlier interlocutory order"); *see also Burns v. MacGibbon (In re MacGibbon)*, BAP No. WW-05-1422-PaNK, 2006 WL 6810935, at *10 (9th Cir. BAP Aug. 14, 2006) ("once the bankruptcy court entered its order confirming the [chapter 11] plan of reorganization, the bankruptcy court's ruling on the motions to dismiss, convert or appoint trustee [became] final and appealable"). Thus, *In re Hull* stands for the proposition that the denial of a dismissal motion becomes final for appeal no later than confirmation.

In any event, unlike §§ 109(g) and 707(b), § 109(e) is not a congressional response to perceived abuse in the bankruptcy system that Congress enacted as a threshold barrier to abusive filings.[11]

More importantly, if we were to accept Jue's argument that *In re Hull* is apposite and *In re Cherrett* is limited to denials of dismissal motions

---

[11] We need not decide whether the distinctions between § 109(e) on the one hand and §§ 109(g) and 707(b) on the other hand are sufficient to justify the divergent treatment of dismissal motions under § 109(e) for finality purposes.

25

under § 707(b), then we would need to resolve an even more problematic issue: in a chapter 7 case, when would the denial of a § 109(g)(2) motion to dismiss become final? Traditional notions of bankruptcy finality suggest that the denial of Jue's motion would not become final and appealable until the closing, conversion, or dismissal of the chapter 7 case. Unlike *In re Hull,* there is no plan to confirm in a chapter 7 case, so the denial of the § 109(g)(2) dismissal motion would continue to be interlocutory until the case was later converted or dismissed or Liu's chapter 7 case was closed. Here, the trustee continues to administer Liu's chapter 7 case.

Recognizing that Liu's bankruptcy has not been "closed" for purposes of appellate finality, Jue contends that the denial of the § 109(g)(2) motion to dismiss became final when the bankruptcy court entered judgment in the preference action. Jue reasons that this is when **his** rights were seriously affected. We disagree with this ad hoc application of finality as it contravenes the very rule Jue advocates. As articulated in *In re Mason* and *In re 405 N. Bedford Dr. Corp.,* finality for denial of dismissals hinged on the **potential** for irreparable harm and the protections included in the Bankruptcy Code to mitigate the risk of such harms. *In re 405 N. Bedford Dr. Corp.,* 778 F.2d at 1378; *In re Mason*, 709 F.3d 1317-18.

Doctrinally, the date of judgment in the adversary proceeding makes little sense for use in determining the finality of eligibility rulings in the main bankruptcy case because each adversary proceeding is a discrete

"judicial unit" for finality purposes. *See Belli v. Temkin (In re Belli)*, 268 B.R. 851, 855 (9th Cir. BAP 2001). Each adversary proceeding is fully resolved only upon entry of a final judgment. *Id.* Thus, there is no special bankruptcy finality rule applicable in adversary proceedings. *Id.*

And what of those bankruptcies in which there are no adversary proceedings? In chapter 7 cases, finality would presumably occur upon the closing, conversion, or dismissal of the case. But the uncertainty of when these milestone events might occur makes them unsuitable as triggers for finality. As a practical matter, accepting Jue's contention would lead to an unworkable piecemeal system of finality, where an order denying case dismissal would become final for different parties in interest at different times. Finality would depend on when, or whether, a party's rights were adversely adjudicated sometime in an adversary proceeding. In short, Jue argues that finality arises only when the potential harms considered in *In re Mason* and *In re 405 N. Bedford Dr. Corp.* are actually realized by a party in interest. Aside from being exceedingly haphazard, this would force the parties and the bankruptcy court to litigate disputes that might be rendered moot if an appellate court later determines that the bankruptcy case should have been dismissed at the outset. Put bluntly, Jue's position on finality in this context, if accepted, would render bankruptcy finality highly impractical.

### c. Application Of Finality After *In re Cherrett* And *McDow*.

We find no meaningful distinction between the denial of dismissal under § 109(g) and the denial of dismissal under § 707(b) held to be final in *In re Cherrett*. Congress enacted both statutes to address abusive bankruptcy filings and to serve as statutory gateways to proceeding in bankruptcy. Both adjudicate a debtor's initial eligibility for bankruptcy, thereby concluding a discrete proceeding that dramatically "alters the status quo and fixes the rights and obligations of the parties." *Bullard*, 135 S. Ct. at 1692.

These situations differ from the motions to dismiss for bad faith at issue in *In re 405 N. Bedford*, *In re City of Desert Hot Springs*, and *In re Rega Properties.* As recognized in *In re City of Desert Hot Springs,* a debtor's bad faith is subject to continuing examination in a reorganization, and denial of dismissal for bad faith does not preclude the bankruptcy court from dismissing the bankruptcy on the same basis later if it subsequently appears that the debtor is not acting in good faith.[12] 339 F.3d at 790. In

---

[12] These cited cases arose in chapter 11 and chapter 9. Similarly, a chapter 7 case may be dismissed for bad faith as cause under § 707(a). *See Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 967 n.24 (9th Cir. 2007) (holding that denial of dismissal of chapter 7 case under § 707(a) is interlocutory). *Hickman v. Hana (In re Hickman)*, 384 B.R. 832, 836 (9th Cir. BAP 2008), presents an interesting case where the BAP granted interlocutory review of the bankruptcy court's denial of the debtor's voluntary motion to dismiss under § 707(a). Because the BAP granted the debtor leave to pursue an interlocutory appeal, there was no need to closely examine the finality of the order

(continued...)

contrast, the bankruptcy court's order denying the § 109(g)(2) dismissal motion "finally and conclusively resolve[d] the issue" of Liu's eligibility to file this chapter 7 bankruptcy. *In re Cherrett*, 873 F.3d at 1065 (quoting *McDow*). In this regard, the denial of the § 109(g) dismissal motion had the same functional effect as the denial of dismissal under § 707(b) in *In re Cherrett*. In both situations, the denial of dismissal determined that the bankruptcy was not abusive and would proceed.[13]

Second, if denial of the § 109(g)(2) dismissal motion cannot be immediately appealed, "the Chapter 7 proceedings would have to be completed before it could be determined whether the proceedings were abusive in the first place." *Id.* (quoting *McDow*, 662 F.3d at 289–90). Both *In re Cherrett* and *McDow* explained how the absence of an immediate appeal in this situation offends the dual policies of judicial economy and the conservation of estate resources.

In this sense, as in *In re Mason*, the continuation of the bankruptcy case "carries with it a great potential for irreparable injury if immediate appeal is not allowed." *In re Mason*, 709 F.2d at 1317. *In re Mason* focused on the potential injury to an involuntary debtor. But bankruptcy alters the

---

[12](...continued) appealed under *In re Mason*, *In re 405 N. Bedford Dr. Corp.*, and now as supplemented by *In re Cherrett.*

[13] We acknowledge that the Fifth Circuit has held that the denial of a § 109(g) dismissal motion is interlocutory rather than final. *See Promenade Nat'l Bank v. Phillips (In re Phillips)*, 844 F.2d 230, 235-36 (5th Cir. 1988). However, *In re Phillips* cannot persuade us that we should depart from *In re Cherrett*, which we are bound to follow.

entirety of debtor-creditor relationships. Significant potential harm arises from the wrongful continuation of any bankruptcy, whether initiated voluntarily or involuntarily. The disposition of the estate's assets and fixing of other rights during the completion of the chapter 7 case doubtlessly has the potential to deprive particular creditors of some or all of the recovery they would be able to obtain outside of bankruptcy. Thus, the continuation of the chapter 7 case often results in dramatic and irreversible changes not only in the debtors' affairs, but also, as this case demonstrates, for creditors now subject to the statutorily augmented rights of the bankruptcy estate.[14]

In addition to the debtor and creditors, we also are concerned about the impact of the continuing chapter 7 case on the trustee and the professionals the trustee employs to help promptly liquidate the estate. *See generally* § 704(a)(1) (setting forth trustee's duty to liquidate the bankruptcy estate's assets). In order to complete a chapter 7 bankruptcy, the trustee frequently must sell estate property, object to claims and exemptions, challenge the debtor's discharge, and avoid certain transfers of estate property. Courts and interested parties must act in reliance on entered

---

[14] The impact of the denial of a motion to dismiss a bankruptcy case is multi-faceted. Aside from the variety of parties potentially impacted, discussed above, the continuation of the case also affects parties in interest temporally because the date of the bankruptcy petition fixes the rights of parties with respect to many different types of issues, including claims, discharge, exemptions, and avoidance rights. *See generally, Ritzen Grp., Inc.*, 2020 WL 201023, at *6 (observing that continuation of bankruptcy case without affording immediate appeal from a denial of relief from stay can have significant adverse consequences on all parties to the bankruptcy case).

orders. To delay appellate review of a debtor's alleged abuse places all chapter 7 activity, and the resulting consequences, at risk of a later appellate determination that the case was, in fact, abusive from the outset.

This has particular consequences for the chapter 7 trustee and his or her professionals, who are compensated (if at all) from property of the estate. Estate professionals work on contingency; they are paid only from assets recovered for the bankruptcy estate. Unlike debtors' professionals in a reorganization that may still pursue payment from their debtors if the reorganization is dismissed, chapter 7 professionals have no means of compensation if it were later determined, possibly years afterwards, that the debtor's bankruptcy violated either § 109(g)(2) or § 707(b).

This case amply demonstrates the risks to the trustee and the estate professionals. Once in bankruptcy, the trustee quickly identified and pursued the sale of real property and avoidance of preferences related to that property to recover monies for all of the unsecured creditors. Withholding a right of immediate appeal here would only exacerbate the adverse economics chapter 7 professionals frequently encounter and run counter to the concerns for judicial efficiency and finality at the heart of *In re Cherrett,* and more recently raised by the Supreme Court in *Ritzen Grp., Inc.*

We conclude that the order denying dismissal was final when entered. Because we lack jurisdiction over Jue's appeal from the order denying the case dismissal motion, our merits review is limited to Jue's

31

appeal from the bankruptcy court's summary judgment in the preference adversary proceeding.

**B.    Merits Issue – Summary Judgment In Preference Adversary Proceeding.**

In both the bankruptcy court and on appeal, Jue did not directly challenge the basic elements for establishing an avoidable preference. Instead, he has focused almost exclusively on a handful of his affirmative defenses. The defenses Jue identifies and relies upon include unclean hands, equitable estoppel, breach of fiduciary duty, and "relation back."[15]

**1.    Basic Law Governing Preferential Transfers And The Unavailability Of Equitable Defenses.**

Generally speaking, the transfer of property of the debtor is an avoidable preference if it has the following five characteristics: (1) it benefits a creditor; (2) it was made on account of an antecedent debt; (3) it was made while the debtor was insolvent; (4) it was made during 90 days immediately preceding the bankruptcy filing; and (5) it enables the creditor to receive a larger amount than it would have received from the estate absent the transfer. *Union Bank v. Wolas*, 502 U.S. 151, 154–55 (1991) (citing

---

[15] In reality, some of these so-called defenses are not properly classified as defenses at all. For example, the breach of fiduciary duty "defense" actually is a cause of action under California law. *See generally Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (identifying cause of action and its elements). Nor is "relation back" an affirmative defense under California law. More precisely, relation back is a legal doctrine Jue has asserted in an attempt to negate the timing element necessary for establishing an avoidable preference. Even so, the proper characterization of these principles does not change our analysis or resolution of this appeal.

11 U.S.C. § 547(b)). Congress "broadly authorized bankruptcy trustees" to avoid preferential transfers "**unless** one of seven exceptions defined in subsection (c) [of § 547] is applicable." *Id.* at 154 (emphasis in original).

This Panel has held that there are no exceptions or defenses to avoidance of preferences other than those specified in the statute. *See Enserv Co., Inc. v. Manpower, Inc./Cal. Peninsula (In re Enserv Co., Inc.)*, 64 B.R. 519, 521 (9th Cir. BAP 1986), *aff'd* 813 F.2d 1230 (9th Cir. Mar. 19, 1987)(table). *In re Enserv* reasoned that the plain language of § 547(c) limited preference defenses to those therein and that "Congress did not intend that actions pursued under Section 547 would be subject to question based on equitable considerations." *Id.* Furthermore, *In re Enserv* is consistent with the Supreme Court's observation: "[w]e have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

Outside of the Ninth Circuit, the vast majority of cases that have expressly considered the issue have held that substantive defenses to § 547 actions are limited to those set forth in the statute. *See, e.g., Ogle v. Advent, Inc. (In re HDD Rotary Sales, LLC)*, Case No. 11-38053, 2012 WL 6694072, at *4 (Bankr. S.D. Tex. Dec. 20, 2012) ("This court joins the host of others that have held that § 547(c) . . . provides the exclusive list of substantive affirmative defenses to a § 547(b) preference action"); *Guinn v. Irwin Mortg.*

*Corp. (In re Patterson)*, 330 B.R. 631, 642 (Bankr. E.D. Tenn. 2005); *contra*, *Philip Servs. Corp. v. Luntz (In re Philip Servs. (Delaware), Inc.)*, 267 B.R. 62, 70–71 (Bankr. D. Del. 2001) (rejecting plaintiffs' assertion that defendants could not raise any affirmative defenses other than those contained in § 547(c)).[16]

In sum, as indicated by *In re Enserv* and the other cited authority, the Bankruptcy Code's statutory scheme governing preferences does not permit Jue to raise the equitable defenses he attempts to raise based on allegations of unclean hands, breach of fiduciary duty, and estoppel.

## 2. Jue's Equitable Defenses Also Are Impermissible Because They Collaterally Attack The Bankruptcy Court's Order Denying The § 109(g)(2) Motion To Dismiss.

Even if the Code did permit equitable defenses, we still would conclude that Jue's defenses are meritless. They all are based on the same fatally-flawed premise: that the chapter 7 trustee's opposition to the § 109(g)(2) motion to dismiss and the bankruptcy court's denial of that motion contravened the plain terms of § 109(g)(2). As a matter of equity, Jue maintains that his attachment lien should not have been avoided when it would not have been avoidable as a preferential transfer but for the

---

[16] The majority cases typically distinguish, and permit, "threshold" or procedural defenses like "lack of personal jurisdiction, standing, or service of process." *In re Patterson*, 330 B.R. at 642 (citing *Kmart Corp. v. Uniden Am. Corp. (In re Kmart Corp.)*, 318 B.R. 409, 415 (Bankr. N.D. Ill. 2004)). *In re Enserv Co., Inc.* did not address the issue of threshold or procedural defenses. 64 B.R. at 521. In any event, all of the defenses Jue has attempted to assert are substantive in nature.

wrongful failure to dismiss Liu's chapter 7 case.

The obvious problem with this argument is that it amounts to an impermissible collateral attack on the denial of the § 109(g)(2) motion to dismiss. As we have explained above, the bankruptcy court's order denying this motion was a final order, and Jue failed to timely appeal that order. He cannot now attack the basis of that order, or the consequences flowing from that order, in his appeal from the preference adversary proceeding. This is exactly what Jue attempts to do by way of his unclean hands, breach of fiduciary duty, and estoppel arguments.

Our prior decisions make clear that appellants cannot successfully challenge an order on appeal by attacking a prior final order that they did not timely appeal. *See, e.g.*, *Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698, 704 (9th Cir. BAP 2013) ("Alakozai's challenge to . . . the In Rem Order in the Fourth Case amounts to a collateral attack on a final order"); *Heritage Pac. Fin., LLC v. Machuca (In re Machuca)*, 483 B.R. 726, 735–36 (9th Cir. BAP 2012) ("the bankruptcy court's order granting summary judgment was final. HPF cannot collaterally attack that judgment through the § 523(d) proceeding"); *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 731 (9th Cir. BAP 2008) ("to the extent that W & E seeks to collaterally attack the validity of that order vacating and annulling the dismissal, it cannot do so in this appeal because the order is final and the time to appeal has passed"); *see also Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1442 (9th Cir. 1991) (rejecting as

frivolous appellant's attempted collateral attack on bankruptcy court's prior sale order).

In short, Jue's unclean hands, breach of fiduciary duty, and estoppel defenses amount to an impermissible collateral attack on the order denying the § 109(g)(2) dismissal motion. Accordingly, these defenses do not support reversal of the bankruptcy court's summary judgment in favor of the trustee in the preference action.[17]

### 3.  Jue's Relation Back Argument Also Lacks Merit.

The only other argument of Jue's we need to discuss is Jue's relation back argument as it impacts the date of the preferential transfer. Jue's argument is twofold. First, Jue argues that his attachment lien related back

---

[17] It also is worth noting that Jue's breach of fiduciary duty defense lacks merit on its own terms. It is premised on Jue's belief that the trustee had a duty to Jue as an individual creditor to protect and preserve his individual lien interest over and above what the trustee might have thought best for Liu's entire body of creditors, or her bankruptcy estate, as a whole. This belief is mistaken. The chapter 7 trustee represents the estate as a whole and is charged with gathering and liquidating all of the estate's assets. §§ 323(a); 704(a)(1); *see also In re Wisdom*, 478 B.R. 394, 399 (Bankr. D. Idaho 2012), *aff'd*, 490 B.R. 412 (D. Idaho 2013), *aff'd sub nom. Wisdom v. Gugino*, 649 F. App'x 583 (9th Cir. 2016) ("'[t]he trustee is a fiduciary charged with protecting the interest of all estate beneficiaries – namely, all classes of creditors . . . .'") (quoting United States Trustee, Handbook for Chapter 7 Trustees, p. 4-2 (Effective October 1, 2012)). The task of gathering and liquidating all of the estate's assets typically is the most important duty the trustee fulfills. *See Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 845 (9th Cir. 2008) (stating that trustee's "primary job is to marshal and sell assets, so that those assets can be distributed to the estate's creditors and then close the estate.")(quoting *U.S. Trustee v. Joseph, (In re Joseph)*, 208 B.R. 55, 60 (9th Cir. BAP 1999)). In carrying out this duty, "the trustee 'may not be the representative of any particular creditor, but must represent all creditors without partiality.'" *Id.* at 844 (quoting *Gross v. Russo (In re Russo)*, 18 B.R. 257, 270–71 (Bankr. E.D.N.Y. 1982)).

to the lis pendens he filed in his state court fraudulent transfer action. And second, Jue argues that the attachment lien related back to the date of the state court's issuance of a right to attach order. Both of these dates fall outside the 90-day preference period under § 547(b)(4)(A) and thereby would negate the timing requirement for the chapter 7 trustee's preference claim. But neither of these relation back arguments have any merit. California law simply does not support them.

### a.    The Lis Pendens Has No Relation Back Effect On Jue's Attachment Lien.

Jue insists that the priority of his attachment lien should relate back to the date he recorded a lis pendens in relation to his real property fraudulent transfer action. Because his lis pendens was recorded outside of the 90-day preference period, Jue maintains that his subsequently acquired attachment lien is not avoidable as a preference.

"'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.'"*Mira Overseas Consulting Ltd. v. Muse Family Enters., Ltd.*, 237 Cal. App. 4th 378, 383 (2015) (quoting *Kirkeby v. Sup. Ct.*, 33 Cal. 4th 642, 647 (2004)). "Because a lis pendens provides constructive notice of the litigation, '**any judgment later obtained in the action** relates back to the filing of the lis pendens.'" *Id.* at 383-84 (quoting *Slintak v. Buckeye Retirement Co., L.L.C., Ltd.*, 139 Cal. App. 4th 575, 586 (2006)) (emphasis added); *see also* Cal. Civ. Proc. Code ("C.C.P.") § 405.24

("The rights and interest of the claimant in the property, as ultimately determined in the pending noticed action, shall relate back to the date of the recording of the notice.").

But Jue never obtained a judgment in his real property fraudulent transfer action. To the contrary, he voluntarily dismissed it with prejudice. Consequently, the rule that enables a judgment in an action affecting real property to relate back to the date of a recorded lis pendens has no application here.[18]

Jue nonetheless maintains that, for purposes of relation back, the attachment lien he obtained in his action for breach of the promissory note should be treated as if it were the same as a fraudulent transfer judgment. He only offers one basis for this treatment: according to Jue, Liu linked the two state court lawsuits by filing a notice of related cases in both the breach of promissory note action and in the fraudulent transfer action. In light of

---

[18] In support of his argument, Jue relies on *Hurst Concrete Products., Inc. v. Lane (In re Lane)*, 980 F.2d 601 (9th Cir. 1992). But Jue's reliance on *In re Lane* is misplaced. *In re Lane* involved a creditor who had obtained, in the same action, a judgment in its favor for **both** monetary damages and for the debtor's fraudulent transfer of real property. *Id.* at 604. Here, in contrast, Jue never obtained any judgment against Liu for fraudulent transfer of real property. The absence of this type of judgment, here, is critical. As *In re Lane* explained, "The ultimate operation of the lis pendens on the Lanes' property is measured by the terms and effective scope of the decision rendered in the Superior Court." *Id.* (citing *Rose v. Knapp*, 153 Cal. App. 2d 379, 386 (1957)). Here, given the absence of a judgment in Jue's favor for the fraudulent transfer of real property, Jue's recorded lis pendens could not possibly have any relation back effect. *See Mira Overseas Consulting Ltd.*, 237 Cal. App. 4th at 383-84.

the notice of related cases, Jue argues that his attachment lien should be given the same effect in the fraudulent transfer action as a fraudulent transfer judgment would have. He cites no authority to support this argument.

Jue's relation back argument relying on the prior lis pendens to purportedly take his attachment lien outside the 90-day preference period makes no sense. The law pertaining to lis pendens practice makes clear that the only relevant action for lis pendens and relation back purposes was Jue's fraudulent transfer action. *See* C.C.P. § 405.24; *Mira Overseas Consulting Ltd.*, 237 Cal. App. 4th at 383-84. But no judgment was entered in that case, and he later dismissed that action. A mere notice of related cases is not substantive. It cannot, and should not, be viewed as potentially changing settled, substantive California law. *See generally* Cal. R. Ct. Rule 3.300 (describing practice and procedure governing notices of related cases); *see also* Hon. Lee Smalley Edmon & Hon. Curtis E. A. Karnow, Cal. Practice Guide: Civ. Proc. Before Trial ¶ 12:38 (The Rutter Group 2019) ("The purpose [underlying related case notices] is to promote judicial efficiency and to prevent plaintiffs from 'judge shopping' . . . ."). In short, we find Jue's relation back argument based on the lis pendens wholly unpersuasive. We therefore reject it.

### b. The Right To Attach Order Has No Relation Back Effect On Jue's Attachment Lien.

Jue alternately claims that his attachment lien related back to the date the state court issued its right to attach order. To support this claim, Jue relies on *Wind Power Systems, Inc. v. Cannon Financial Group, Inc. (In re Wind Power Systems, Inc.)*, 841 F.2d 288 (9th Cir. 1988). *In re Wind Power Systems, Inc.* dealt with a bankruptcy trustee's preference claim and the effect of a creditor's overlapping liens arising, respectively, from a temporary protective order and a subsequent levy on a writ of attachment. 841 F.2d at 290. Relying on Cal. Civ. Proc. Code § 488.500(a) & (e), *In re Wind Power Systems, Inc.* held that when a creditor attaches property that already is subject to the creditor's lien arising from a temporary protective order, the priority of the subsequent attachment lien "relates back" to the date of the earlier lien. *Id.* at 291. As a result, *In re Wind Power Systems, Inc.* concluded that the creditor's attachment lien, which was created within the 90-day preference period, was not avoidable as a preference, because the creditor's prior lien arising from the temporary protective order was created outside of the 90-day preference period. *Id.* at 292.

By relying on *In re Wind Power Systems, Inc.*, Jue effectively claims that, for relation back purposes, the right to attach order he obtained is the same thing as a temporary protective order. We disagree. Jue never obtained a temporary protective order. Moreover, temporary protective orders are not by any means the same as right to attach orders. Temporary

protective orders create liens, per C.C.P. § 486.110, and require a showing that they are necessary to prevent great or irreparable harm. *See* C.C.P. § 486.020(d). In contrast, right to attach orders do not create liens and do not require a showing of great or irreparable harm. *See* C.C.P.§ 484.090; *see also* Hon. Alan M. Ahart, Cal. Practice Guide: Enforcing Judgments & Debts ¶ 4:129  (The Rutter Group 2019) (stating that a right to attach order "is like a 'declaratory relief' order, determining for purposes of the action that the plaintiff's claim is one for which a [writ of attachment] may issue, then or later.").

At bottom, Jue would have us conflate his right to attach order with a temporary protective order merely because he believes it would lead to an equitable result in this case. Assuming without deciding that equity supports the result Jue seeks to reach, we decline to re-fashion California law merely to fit his general notion of what equity requires. California's attachment procedures are strictly construed, and we are not free to expand or alter them in this manner. *See Kemp Bros. Constr. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476 (2007) (noting strict construction of California's attachment procedures); *see also VFS Fin., Inc. v. CHF Express, LLC*, 620 F. Supp. 2d 1092, 1095–96 (C.D. Cal. 2009) (explaining purpose and basic requirements of California's attachment laws). Accordingly, we reject as meritless Jue's relation back argument.

At the end of the day, given that Jue's relation back argument has no merit and that Jue obtained his attachment lien within 90 days of Liu's

chapter 7 bankruptcy filing, it was not even necessary for the trustee to prevail on his preference claim in order to prevent Jue from enforcing the lien. By operation of California law, the attachment lien automatically terminated upon the filing of Liu's chapter 7 petition. C.C.P. § 493.030(b); *see also In re Wind Power Systems, Inc.*, 841 F.2d at 293 ("The purpose of [C.C.P. § 493.030(b)] is to have a lien of attachment declared void without court action"); *In re Aslanyan*, Case No. 17-24195-A-7, 2017 WL 6520450, at *1 n.1 (Bankr. E.D. Cal. Dec. 20, 2017) (citing same statue and stating: "[h]ad the attachment lien been recorded less than 90 days prior to the bankruptcy, it would have terminated when the debtor filed this case."); 12 Miller & Starr, Cal. Real Est. § 42:40 (4th ed. 2019) ("When . . . a voluntary or involuntary petition in bankruptcy has been filed, any attachment or temporary protective order issued within the preceding 90 days is terminated").[19]

---

[19] California law also provides for the automatic preservation of the lien for the estate's benefit. C.C.P. § 493.060 ("Upon the filing of a petition commencing a case under Title 11 of the United States Code (Bankruptcy), a lien terminated pursuant to this chapter is preserved for the benefit of the estate."). Even so, the chapter 7 trustee's preference action was not a meaningless endeavor. Before the bankruptcy court could have applied either §§ 547 and 550, or C.C.P. §§ 493.030 and 493.060, the bankruptcy court needed to ascertain whether Jue's relation back arguments had any merit. If Jue had prevailed on either of those arguments, then the attachment lien would have been treated as created before the 90-day preference period. This would have been sufficient to defeat both the trustee's preference claim and application of C.C.P. §§ 493.030 and 493.060. *See In re Wind Power Systems, Inc.*, 841 F.2d at 292-93.

## CONCLUSION

For the reasons set forth above, we DISMISS for lack of jurisdiction Jue's appeal from the order denying the § 109(g)(2) dismissal motion, and we AFFIRM the bankruptcy court's preference summary judgment in favor of the chapter 7 trustee.

Concurrence begins on next page.

TAYLOR, Bankruptcy Judge, concurring:

I join in the well-reasoned decision to dismiss the appeal from the order denying the § 109(g)(2) dismissal motion for lack of jurisdiction.

I also agree with my colleagues' analysis regarding the preference action. I write separately, however, to make plain my view that, while litigation involving the attachment lien was inevitable, a preference action to set it aside was unnecessary. Mr. Jue obtained his attachment lien under California law and during the 90 day preference period preceding Ms. Liu's bankruptcy filing. I, thus, conclude that under California law it terminated on the petition date.

In early 1979, the California Legislature anticipated Congressional enactment of the new bankruptcy code. The Legislative Counsel's Digest, as relevant here, discussed this pending legislation as follows:

> AB 617, as introduced, McAlister (Jud.). Attachment. Under existing state law, . . . the filing of a petition in bankruptcy terminates a lien . . . of attachment if the lien was created within 4 months prior to the . . . the filing of the petition.
>
> This bill would reduce such time period to 90 days, consistent with the 90-day preference period of the recently enacted federal Bankruptcy Reform Act of 1978 (hereinafter Act).
>
> Existing law provides that, where a lien of attachment terminates as a result of the . . . filing of a petition in bankruptcy . . . the trustee, receiver, or debtor in possession if

1

there is no trustee or receiver, may secure the release of the attachment by filing a request therefor. The recently enacted federal Act prohibits a bankruptcy judge from appointing a receiver in a bankruptcy case but authorizes appointment of an interim trustee.

This bill would delete receivers as a category of persons who may secure the release of attachment and substitute interim trustees, thus making state law consistent with federal law.

Under current federal law, a court must determine whether or not a transfer should be preserved for the benefit of a bankrupt estate where such transfer has been avoided. However, the recently enacted federal Act, to take effect October 1, 1979, provides that any avoided transfer is automatically preserved for the benefit of the estate. Existing state law acknowledges that, under federal law, the bankruptcy court could order a lien preserved for the benefit of a bankrupt estate.

This bill would delete such acknowledgment in state law and, instead, provide, consistent with the recently enacted federal Act, that a lien of . . . attachment terminated by the filing of a petition commencing a case under specified federal law is preserved for the benefit of the bankrupt estate.

The bill would become effective immediately as an urgency measure, but would not become operative until October 1, 1979, thus coinciding with the operative date of the federal Act.

The bill would not apply to any bankruptcy case commenced prior to October 1, 1979.

A.B. 617, Assemb. Reg. Sess., at 1-2 (Cal. 1979-80).

Consistent with this statement of legislative intent, the California

2

Legislature enacted C.C.P. § 493.030(b) which, since its operative date of October 1, 1979, has stated as follows:

> The filing of a petition commencing a voluntary or involuntary case under Title 11 of the United States Code (Bankruptcy) terminates a lien of . . . attachment if the lien was created within 90 days prior to the filing of the petition.

C.C.P. § 493.040 recognizes that, as a practical matter, the automatic termination of the lien may not accomplish a return of assets or a clarification of the public record. So, it provides a procedure for acquiring such cooperation. In particular, the levying officer must release the attachment 10 days from the date of mailing of papers to the plaintiff unless otherwise ordered. C.C.P. § 493.040(f).

Finally, as relevant here, C.C.P. § 493.060(b) provides as follows:

> Upon the filing of petition commencing a case under Title 11 of the United States Code (Bankruptcy), a lien terminated pursuant to this chapter is preserved for the benefit of the estate.

These provisions of California law were clearly intended to mirror the Bankruptcy Code and to provide for release of attachment liens without the necessity of an involved judicial process. *See In re Wind Power Sys., Inc. v. Cannon Financial Group, Inc. (In re Wind Power Sys., Inc.)*, 841 F.2d 288, 293 (9th Cir. 1988) ("The purpose of [C.C.P. § 493.030(b)] is to have a lien of attachment declared void without court action.").

During oral argument, we asked counsel for the chapter 7 trustee

why he filed a preference action; he responded only with a nonspecific concern regarding preservation of the lien for the benefit of the estate. But, C.C.P. § 493.060(b) already provides for lien preservation. And in my review I found no case even questioning that California law automatically invalidated attachment liens and preserved them for the benefit of the estate.

As a result, I believe that the preference action was unnecessary. Under California law, the lien had already ceased to exist. And under California law, the lien had already been preserved for the benefit of the estate. All that was left here was for the trustee to obtain an order requiring expungement of the attachment from the public record.

Having said the above, I again acknowledge that this is an unusual case. First, Mr. Jue also obtained a stipulated judgment during the preference period. But the record does not evidence that he also obtained a judgment lien. I found no case holding that a judgment during the preference period negated automatic termination of a preference period attachment lien. And, as my colleagues make clear, Mr. Jue did not raise defenses arising under preference law; he attacked the bonafides of the bankruptcy filing and argued that the attachment itself arose outside the 90 days prior to filing the petition. Thus, I acknowledge again that this litigation was inevitable; Mr. Jue would have raised these points even if the trustee took the path I suggest and merely sought expungement of the

4

attachment from the public record.

In sum, I feel compelled to make these points because silence may be viewed as a green light at best, and at worst a mandate, that trustees ignore the California law that terminates attachment liens obtained during the 90-day preference period. In my opinion, they shouldn't.